## PRESSMAN, ADMINISTRATOR OF ESTATE OF
## WILLIAM L. HARRIS *v.* STATE
## ACCIDENT FUND

[No. 209, September Term, 1966.]

*Decided April 12, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Maurice J. Pressman,* with whom were *Schonfield & Schonfield* on the brief for appellant.

*Charles R. Goldsborough, Jr., Assistant Attorney General,* with whom were *Robert C. Murphy, Attorney General* and *J. Howard Holzer, Special Attorney* on the brief for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

The administrator of a deceased workman named Harris (both the administrator and the workman are hereinafter referred to as Harris) has appealed from a summary judgment that the State Accident Fund was not the insurer of the employer of the workman at the time of the accidental injury (death was from a cause unrelated to the injury). The decisive question is whether the Fund had effectively cancelled its coverage before the happening of the accident.

Harris was a truck driver who injured his back on June 27, 1963, while on a truck belonging to K. & H. Steel Transportation, Inc. but leased to George W. Brown, Inc. The Fund had issued a workmen's compensation policy to K. & H. on December 13, 1961, and claims that on April 25, 1963, it sent K. & H. a notice that the policy would be cancelled as of May 25, 1963, because of an unpaid premium. On May 3, 1963, the Fund delivered to the Workmen's Compensation Commission a notice dated May 1, that it intended to cancel K. & H.'s policy on May 25. Harris filed a claim with the Commission in October 1963 and K. & H. through one of its officers filed an issue as to whether the injury arose "out of and in the course of" the employment, as to the sustaining of a hernia, and as to the nature and extent of disability. On February 18, 1964, Harris amended his claim to include one Bower as an additional employer, and the attorneys for K. & H. filed issues as to whether the Fund was the insurance carrier of K. & H. with respect to Harris' claim, and as to whether Harris was an employee of George W. Brown or of K. & H. at the time of the accident. On March 6 the Fund filed an issue asking whether K. & H.'s issue as to the Fund's being an insurance carrier was "a frivolous and harassing issue," entitling the Fund to be reimbursed for its attorney's fees.

On March 17 the Commission sent all parties (but not the Fund) notice of a hearing scheduled for April 3, 1964. A hearing was held on the scheduled day. At the outset of the proceeding, at which the Fund was not represented, the hearing commissioner said that in regard to the issue of whether "he" (which must have meant K. & H. or Harris, or both) was insured by the State Fund, "We will see what testimony develops and then set it in specially and send them [the Fund] notice so they can defend themselves." No evidence was introduced at the hearing of April 3 as to whether the Fund was the insurer on the critical date. The Commission held that Harris was an employee of K. & H. (and of no one else), and on April 28, 1964, made an award for temporary total disability of $48 a week.

Harris took an appeal to the Court of Common Pleas of Baltimore City on the aggrievement that Brown had been his sole employer or at least a co-employer with K. & H. This appeal has never been prosecuted or decided.

On March 26, 1965, Harris' lawyer wrote the Commission as follows:

> "The following Issue was raised in this case, but was not passed upon and reserved for future determination by Commissioner Valle:
>
> 'Is the State Accident Fund, 301 W. Preston Street, Baltimore, Maryland 21201, the insurance carrier insuring the K. & H. Steel Transport Company, with respect to this claim?'
>
> "Kindly set it for hearing for a determination of the above issue."

The Commission held a hearing on July 12, 1965, on the issue as to insurance coverage, at which there was offered in evidence the notice of cancellation dated May 1, 1963, filed with the Commission on May 3, 1963. On August 23 the Commission ruled that the Fund was the insurance carrier for K. & H. at the time of the accidental injury to Harris on June 27, 1963, and revoked its order of April 28, 1964, and ordered payment by the Fund of temporary total disability at the rate of

$48 a week from August 19, 1963. The Fund appealed this order to the Circuit Court for Baltimore County.

In the Circuit Court both Harris and the Fund moved for a summary judgment, and Harris further moved for a remand of the case to the Commission under Maryland Rule B12 for a hearing at which the Fund could controvert Harris' claim against it on any defenses on the merits it desired to interpose. The Fund filed an amended affidavit in support of its motion which recited that a notice of cancellation as of May 25, 1963, dated May 1, was received from the Fund by the Commission on May 3, and that the Commission did cancel the policy as of May 25, and adding:

> "That on April 25, 1963, because of failure to pay premium due, a Notice of Cancellation was sent to the K & H Steel Transport, Inc., notifying it that its said workmen's compensation insurance policy No. E-2207, issued by the State Accident Fund was cancelled, a photostatic copy is attached."

There was attached to the affidavit a carbon copy of a printed form notice of cancellation, unaddressed and unsigned, on which were blanks intended to be filled in with the pertinent dates and numbers for each case. The typewritten letters and numbers were superimposed on the printed lines instead of in the spaces in which they were supposed to be, and the result was an illegible jumble.

The applicable statute as to cancellation of coverage by the Fund, Code (1964 Replacement Vol.), Art. 101, § 77 a (the statute), provides that if an employer fails to pay a premium on the "policy or contract of insurance" issued to him by the Fund, the Fund may cancel the policy "effective upon the expiration of at least thirty days after notice of intention to cancel * * * such contract or policy of insurance, on a date specified in such notice, shall be filed in the office of the Workmen's Compensation Commission and also served on the employer. Such notice shall be served on the employer by delivering it to him or by sending it by mail, by registered letter * * * and if the employer be a corporation then the notice may be so given

to any agent or official of the corporation upon whom legal process may be served."

The statute goes on immediately to provide that "when an employer receives notice [of cancellation] from the State Accident Fund in accordance with the provisions of this subsection * * * it shall be the duty of said employer immediately thereafter to secure compensation to his employees in accordance with one of the ways set forth in § 16 of this article, which will be in force on the date the cancellation becomes effective."

Although the only issue before the Circuit Court was whether the Commission had erred in fact or in law in finding that the Fund was the insurer of K. & H. when Harris was injured, and this issue turned on whether the Fund had given the notice to both the employer and to the Commission in the way specified in the statute, Judge Barrett seemingly assumed as a basis of decision that the statute had been complied with as far as notice to the employer was concerned, and concentrated on the validity of notice to the Commission. Neither Harris nor the Fund—in the Fund's case quite understandably—undertook to disturb the court's assumption. Despite this, we think the question of the effectiveness of the notice to K. & H. necessarily was before the court. The Fund had sworn in its affidavit in support of its amended motion for summary judgment that it had timely "sent" the cancellation notice to K. & H. and Judge Barrett's decision that the cancellation was effective had to include the conclusion, although implicitly, that there had been effective compliance by the Fund with the statute. The parties and the court went on to assume that *Moore v. London Guarantee & Accident Co.,* 233 Md. 425, controlled the decision. *Moore* held that a cancellation notice to the Commission dated March 29 and specifying May 5 as the day of cancellation which referred to an incorrect policy number was ineffective because of the error as to the policy number and, also, that a second notice similarly dated March 29, giving the correct policy number, received by the Commission on April 16 and specifying May 5 as the cancellation date was not effective on May 5 and would not be effective until at least thirty days from the date the Commission received it, if then, and said:

> "And since the date of the accident, May 10, 1962, was within the thirty-day 'waiting' period, it follows that the [insurer] was still the insurer on the date the claimant was injured, and we so hold."

The cancellation notice to the employer was prima facie defective in *Moore* and the Court concluded its opinion by stating :

> "With the aforegoing holding we need not decide in this case whether the notice of cancellation sent to the employer was sufficient to meet the requirements of § 19 (e) [of Art. 101, the counterpart for private insurance companies of § 77 (a), the Fund provision]."

Judge Barrett held that by analogy to the holding in *Moore* the thirty-day period began when the Commission received a proper notice of cancellation, and since the injury to Harris happened well beyond the end of that thirty-day period the Fund's insurance had been timely cancelled and the Fund was not K. & H.'s insurer at the critical time.

We think the decisive point in the case is that reserved in *Moore,* the sufficiency of the notice to the employer. The statute requires notice both to the Commission and the employer and specifies the mode of serving notice on the employer—by delivery or by registered letter—and spells out the reason for notice to the employer—so that "when an *employer* receives notice" he shall immediately secure proper compensation coverage for his employees. (Emphasis added.)

We said in *Moore* at pp. 428-29 of 233 Md. :

> "Where, as here, the procedure for cancelling workmen's compensation insurance is prescribed by statute, it is generally held that strict compliance with the statute is necessary in order to effect a valid cancellation * * *. With respect to workmen's compensation, the statute (§ 63 of Art. 101) requires that the law be 'so interpreted and construed as to effectuate its general purpose.'
>
> "* * * Inasmuch as a strict compliance with § 19 (e) [the counterpart of § 77 (a)] is mandatory in order to effectively cancel a compensation insurance policy, it was necessary for the insurer to send the

Commission a correct 'notice of intention to cancel such contract' at least thirty days prior to the stated effective date of cancellation."

*Cf. Fidelity & Casualty Co. v. Riley*, 168 Md. 430. See also Merrill, *Notice* § 601, pp. 658-59; and *Preferred Acc. Ins. Co. of New York v. Van Dusen* (Okla.), 210 P. 2d 341, 344, which emphasized that notice to the employer is mandatorily required to make cancellation of a compensation policy effective because of the aim of the law to require him to procure other coverage for his employees. The Court said: "We hold that the method of cancellation provided by the statute is mandatory, and must be strictly complied with in all respects in order to relieve an insurance company from liability under a Workmen's Compensation policy issued by it."

It is generally held that the burden of proving notice is on him who must give it. 1 Merrill, *Notice* § 614, pp. 689-90: "Service of notification must be proved * * *. The proof must show service upon all persons, who, under the applicable rules, are entitled to notification * * *. The several notifications thus required must coincide in content." *Hanna v. Reliance Insurance Co.* (Pa.), 166 A. 2d 877, 879-80: "With respect to the establishment of the facts required to show that the policy had been cancelled by the defendant 'The burden of proof rested upon it and it was obliged to show, as a part of its defense, that it had complied with every term of its policy relating to cancellation.' " See *Passmore v. Austin* (Idaho), 253 P. 2d 800, holding that notice of cancellation sent by ordinary mail did not satisfy statute and identical policy requirements of notice by personal delivery or by registered mail, and *Fidelity & Casualty Co. v. Riley, supra,* in which this Court held that a policy provision requiring notice of cancellation by delivery to the insured or by ordinary mail was not complied with by sending the notice by registered mail with instructions to deliver to addressee only (the letter never having been delivered).

Section 77 (a) would seem to contemplate that there must be an actual receipt of notice of cancellation by the insured but we need not decide the point for, unlike *Montgomery County Board of Education v. Glassman Construction Co., Inc.,* 245 Md. 192 (1967), which construed the notice requirements of

Code (1957), Art. 90, § 11 (to enable suppliers of labor and materials to recover on the statutory bond given by the prime contractor to a public body like the School Board), the problem here is not whether the critical test of the statute is merely mailing in the specified way or actual receipt. Here there was simply no proof that the Fund delivered the notice to K. & H. or sent it a registered letter containing the notice or, indeed, that a notice was ever received. The Fund's amended affidavit says only that notice was "sent."

The term "sent" ordinarily would negate manual delivery; it could or could not connote a sending by registered mail or by ordinary mail. The bare allegation that the notice was "sent" offered no proof of the required compliance with the statute and gave no support—and there was no other—to the Fund's claim that its coverage was not in force when Harris hurt his back.

The Fund contends that Harris is precluded from recovering because the Commission lacked jurisdiction to pass its order of August 23, 1965, finding the Fund to be K. & H.'s insurer. The contention has several thrusts. First, it is claimed that the Commission had decided that K. & H. was uninsured by its order of April 28, 1964, and, having done this, cannot reverse itself, and, second, that Harris did not appeal from that part of the order of April 28 determining K. & H. to be uninsured, and therefore now is bound by that order and, further, that in any event the taking of an appeal automatically deprived the Commission of jurisdiction to act in the matter while the appeal was pending.

We think it is plain that the Commission did not decide that K. & H. was uninsured. After May 25, the date specified in the cancellation notice, the Commission routinely marked its records to reflect the cancellation it assumed had been effected and designated K. & H. as having "no insurance" or as a "non-insurer." For example, in the title of the case in the order of April 28 awarding Harris compensation, K. & H. is designated "non-insurer" and the order itself reads "that K. & H. Steel Transport, Inc., employer, non-insurer, pay unto William Leroy Harris, claimant, compensation * * * of $48.00, payable weekly * * *." Both the title of the case in which the order of April 28 was passed and the references in the body of the order were

no more than designations which reflected the state of the Commission's records. They were not decisions or orders adjudicating K. & H. to be uninsured. This is made manifest by the fact that no evidence on the point was offered or considered at the hearing, by the hearing Commissioner's statement that the issue of insurance would be specially set after notice to the Fund and an opportunity to it to defend, by Harris' request to the Commission of March 26, 1965 for a hearing, which said that the "following issue" had been raised but not passed upon, having been "reserved for future determination by Commissioner Valle—'Is the * * * Fund * * * the insurance carrier insuring * * * K. & H. * * *?'" and by the fact that the issues listed in the order of April 28 did not include the insurance issue. Since the order of April 28 did not include the issue of insurance, was not based on evidence on the issue and did not adjudicate the issue, there was no need for Harris to appeal on the point from that order. "An appeal is allowed, not from a finding or opinion of the Commission, but from its 'decision' disposing of the case." *Furley v. Warren-Ehret Co.*, 195 Md. 339, 345; *Tobacco Company v. Goslin*, 163 Md. 74. The reviewing court considers and passes only on matters covered by the issues raised and decided below or on relevant matters as to which there was evidence before the Commission. *Richardson v. Home Mutual*, 235 Md. 252, 255, and cases cited.

Inasmuch as no evidence was offered on the point of insurance before the order of April 28 and no decision made on the issue, the Commission had jurisdiction and power to adjudicate the status of K. & H. as insured or uninsured, as it did on August 23. Under § 40 (c) of Art. 101 "the powers and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified * * *." See *Plater v. Kane Warehouse*, 241 Md. 462, 466. In *Union Mining Co. v. Del Signora*, 191 Md. 55, 61, it was said: "After the Commission made the award in this case, and no appeal was taken therefrom, it retained jurisdiction over the matter, because section 66 provides that thereafter its jurisdiction was continuing." The quoted language would not, we think, prevent retention and exercise of jurisdiction and power by the Commission

to deal with aspects of a case that were not dealt with or embraced within a decision on the other aspects which had been appealed. There is persuasive authority supporting this view. In *Waddle v. State Industrial Court* (Okla.), 394 P. 2d 511, 514, there was a factual situation similar to that now before us. The Court said the Oklahoma statute was taken from that of New York (both were like that of Maryland as to continuing jurisdiction) and relied in part on the case of *Jones v. Schenectady Boys Club*, 93 N. Y. S. 2d 764, which had held that the Board lost jurisdiction when an appeal was taken "as to questions raised by the appeal" but that "in other respects its power over decisions and awards was unaffected," to hold that "* * * a proceeding in this Court to review an order of the State Industrial Court divests such court of jurisdiction of the particular matters or issues sought to be reviewed only and that the State Industrial Court has continuing jurisdiction over aspects of the case not directly or indirectly involved in the action seeking vacation of such order." *State v. Industrial Commission* (Ohio), 165 N. E. 2d 211, 216, was to the same effect. "The cases that hold that an appeal from the order of an administrative agency stays the power of the agency to proceed further until the issues on appeal have been resolved have arisen when the issue on appeal deals with the same issues upon which the agency attempts to act pending appeal. These cases are to be distinguished from cases like the instant case where the conduct of the agency in continuing to act in the proceeding is in furtherance of its duties under the law with respect to matters which are independent and distinct from the issues on appeal and come within the agency's exclusive jurisdiction." See also 73 C. J. S. *Public Administrative Bodies and Procedure* § 179.

The judgment below should have been for Harris on the issue that the Fund was the insurance carrier of K. & H. at the time of the accidental injury and the case remanded to the Commission to give the Fund the opportunity to defend on such other of the issues as it chooses to do, and it will be so ordered.

> *Order reversed, with costs, and case remanded for further proceedings as indicated.*