37 A.3d 972

**POTOMAC ABATEMENT, INC., et al.**

v.

**Edy SANCHEZ.**

**No. 56, Sept. Term, 2011.**

Court of Appeals of Maryland.

Feb. 21, 2012.

702 

Richard W. Scheiner (Julie D. Murray of Semmes, Bowen & Semmes, Baltimore, MD), on brief, for petitioners.

Harvey Greenberg (Law Offices of Harvey Greenberg, Towson, MD), on brief, for respondent.

George A. Nilson, Herbert Burgunder, Jr., Baltimore, MD, for Amicus Curiae Anne Arundel County Government, Maryland Association of Boards of Education Workers' Compensation Group Self Insurance Fund, Mayor & City Council of Baltimore, Maryland Self-Insurers' and Employers' Compensation Association.

Robert J. Zarbin, The Jaklitsch Law Group, Upper Marl-boro, MD, for Amicus Curiae brief of Maryland Association for Justice.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, RAYMOND, G. THIEME, JR. (Retired, Specially Assigned) JJ.

ADKINS, J.

In this workers' compensation case, we encounter a particularly vexing statutory construction problem involving the question of when the Workers' Compensation Commission ("Commission") will lose jurisdiction to decide a worker's additional requests for relief while a previous order is being appealed. On two separate occasions, Respondent Edy Sanchez filed for benefits with the Commission while previous orders, in the same claim, were pending on appeal in the courts. The Commission decided that it lacked jurisdiction to consider his new requests because of the pending appeals. The Circuit Court for Baltimore County agreed, holding that the Commission did not retain jurisdiction pending an appeal because the issues raised in the new filings did not fit within the jurisdictional provisions of Md.Code (2000, 2008 Repl.Vol.) Section 9–742 of the Labor and Employment Article.[1] The Court of Special Appeals ("CSA") reversed, holding that the Commission had jurisdiction over Respondent's new issues under Section 9–736(b). *Sanchez v. Potomac Abatement, Inc.,* 198 Md.App. 436, 451, 18 A.3d 100, 109 (2011).

We granted *certiorari*[2] to answer the following question:

In light of the language and legislative history of Section 9–742, may the Workers' Compensation Commission retain

---

1. Unless otherwise provided, all statutory references are to the Labor and Employment Article of the Maryland Code.

2. *Potomac Abatement, Inc. v. Sanchez,* 421 Md. 192, 25 A.3d 1025 (2011).

jurisdiction, under Section 9–736(b), while a prior Order is pending on appeal? [3]

We shall affirm the judgment of the Court of Special Appeals. Under Section 9–736(b), the Commission retains jurisdiction to hear new issues while other issues in the same claim are pending on appeal, so long as no evidence was taken or decision made on the new issues in the hearing from which the appeal was taken. Section 9–742 was not intended to reduce the Commission's ongoing jurisdiction to grant relief, notwithstanding the appeal.

## FACTS AND LEGAL PROCEEDINGS

On September 22, 1998, Respondent sustained a serious injury working for Petitioner Potomac Abatement, Inc. In his words: "I was cutting out a piece of the ceiling and the ceiling fell in on me and I fell about 7 feet." He injured his back, pelvis, and leg, and for years suffered lower back pain, leg pain, sciatica, and depression. His ability to work was reduced.

As a result of his injury, Respondent filed a claim with the Commission on or about May 5, 1999. During the next six years, he made a number of filings unrelated to this appeal. Then, between 2006 and 2009, Respondent filed three new sets of issues with the Commission under his original claim, No. B464869. Following the Commission's rulings, he appealed each set of issues to the Circuit Court for Baltimore County,[4] and again to the Court of Special Appeals. Because the sets of issues were filed and appealed at different times, they

---

**3.** We have edited the question presented for clarity. As originally worded, the question was:

> Did the Court of Special Appeals err when, in a case of first impression, it held, contrary to the plain language and legislative history of Md.Code Ann., Lab. & Empl. § 9–742, that the Workers' Compensation Commission may retain jurisdiction while a prior Order is pending on appeal pursuant to the provisions of Md.Code Ann., Lab. & Empl. § 9–736?

**4.** Pursuant to Section 9–737 and Md. Rule 7–201.

became three different cases in the Circuit Court. We shall refer to the three cases chronologically, as *Sanchez I*,[5] *Sanchez II*,[6] and *Sanchez III*.[7]

Respondent filed *Sanchez I* with the Commission on May 10, 2006. He requested permanent partial disability benefits ("PPD")[8] and temporary total disability benefits ("TTD")[9] for several discrete periods. After a hearing, the Commission issued its decision on August 3, 2006, awarding some of the benefits he had requested. Respondent appealed that decision to the Circuit Court for Baltimore County and filed a Motion for Partial Summary Judgment. The motion argued that

the Commission erred as a matter of law in determining the amount of the weekly compensation during the 150 week period for which permanent, partial disability was awarded. The error of law pertains to an interpretation of the Worker's Compensation Act and particularly, whether the cap or maximum amount of weekly benefits is based on the Maryland Statewide Average Weekly Wage at the time of the accident or during the period for which the permanent partial disability compensation was awarded. The above captioned issue is a legal issue and there are no material facts in dispute.

After a trial in which he received an award, Respondent filed an appeal from the Circuit Court's denial of the motion, seeking a ruling of law on the issue of "whether the Maryland Statewide Average Weekly Wage index [SAWW] used to

5. Circuit Court for Baltimore County, Case No: C–06–9067.

6. Circuit Court for Baltimore County, Case No: 03–C–08–012114.

7. Circuit Court for Baltimore County, Case No: 03–C–09–013730.

8. *See* §§ 9–625—34; *Wal Mart Stores, Inc. v. Holmes,* 416 Md. 346, 354 n. 2, 7 A.3d 13, 17 n. 2 (2010) (describing permanent partial disability as a "disability which is permanent in duration and partial in extent").

9. *See* §§ 9–618—24; *Buckler v. Willett Constr. Co.,* 345 Md. 350, 356, 692 A.2d 449, 451–52 (1997) ("Temporary total disability benefits ... are those paid to an injured worker who is wholly disabled and unable to work because of the injury." (citations omitted)).

calculate and establish the maximum or cap of weekly compensation ... is that index on the date of the accident or on the date the right to such compensation commences." [10] With this issue pending in the Court of Special Appeals, Respondent filed *Sanchez II* with the Commission on July 31, 2008, requesting TTD for a new period, from January 9, 2008, to June 11, 2008.

Citing Section 9–742, the Commission decided that it lacked jurisdiction to hear the issue because *Sanchez I* was pending on appeal. Respondent appealed this decision to the Circuit Court and the parties filed motions for summary judgment. The Circuit Court affirmed the Commission's ruling, and Respondent appealed. While that appeal was pending before the Court of Special Appeals, we granted *certiorari* in *Sanchez I* on June 17, 2009. *Sanchez v. Potomac Abatement*, 409 Md. 47, 972 A.2d 861 (2009). Thus, while *Sanchez I* was pending in this Court and *Sanchez II* was pending in the CSA,[11] Respondent filed *Sanchez III* on August 19, 2009, claiming that he was entitled to vocational rehabilitation [12] in light of a doctor's prescription dated May 5, 2009.

In *Sanchez III*, the Commission again decided that it did not have jurisdiction to hear the issue, citing Section 9–742,

---

**10.** Following the denial of Respondent's Motion for Partial Summary Judgment, a trial was held in the Circuit Court for Baltimore County. Based on the jury's verdict, the Commission's prior order was vacated and the case was remanded for entry of an order revising the amount of relief. *See Sanchez v. Potomac Abatement, Inc.*, 417 Md. 76, 81, 8 A.3d 737, 739 (2010).

Respondent also filed new issues, on January 28, 2008, for TTD between November 30, 2007 and January 8, 2008. In this instance, Petitioners did not argue that the Commission lacked jurisdiction because of the pending appeal, and the Commission ordered TTD benefits for the period requested.

**11.** Respondent filed a petition for *certiorari*, which we denied on June 19, 2009. *See Sanchez v. Potomac Abatement*, 409 Md. 49, 972 A.2d 862 (2009).

**12.** *See* § 9–670(e)(1) (" 'Vocational rehabilitation services' means professional services reasonably necessary during or after or both during and after medical treatment to enable a disabled covered employee, as soon as practical, to secure suitable gainful employment.").

because the other two cases were pending on appeal. Respondent appealed to the Circuit Court, and the parties filed motions for summary judgment on that issue. The Circuit Court affirmed the Commission's ruling, reasoning that the Commission lacked jurisdiction because of the cases pending on appeal. Respondent appealed that decision on May 21, 2010. Because *Sanchez II* was still pending in the CSA on the same issue, the court consolidated *Sanchez II* and *Sanchez III*. *Sanchez v. Potomac Abatement, Inc.*, 198 Md.App. 436, 443, 18 A.3d 100, 104 (2011).

## Mootness

While *Sanchez II* and *Sanchez III* were pending in the CSA, we decided *Sanchez I*, holding that "the SAWW of the year of the accidental injury controls the amount of a PPD award." *Sanchez v. Potomac Abatement, Inc.*, 417 Md. 76, 82–84, 8 A.3d 737, 740–41 (2010). The CSA then held that *Sanchez II* and *Sanchez III* had become moot because the obstacle to the Commission's jurisdiction (the pending appeal) had been removed. *Sanchez*, 198 Md.App. at 444, 18 A.3d at 105. Nevertheless, the CSA reached the issue of the Commission's jurisdiction pending an appeal. As Judge Zarnoch wrote:

> [T]his case implicates the "public interest" offshoot to the mootness doctrine. [Respondent] raises significant issues involving the proper interpretation of important social legislation that bears not only on future claimants' rights to prompt compensation for their injuries, but also on the efficient operation of both the Commission and the courts. Thus, we believe the public interest would be served by an expression of our views for the guidance of courts, litigants, and the Commission.

*Id.* at 444–45, 18 A.3d at 105 (citing *Cottman v. State*, 395 Md. 729, 745, 912 A.2d 620, 629 (2006)). The Court then held that the Commission had jurisdiction over Respondent's new issues under Section 9–736(b), even though other issues were pending on appeal in this Court and the CSA. *Id.* at 451, 18 A.3d at 109. The Petitioners sought certiorari, which we granted on

August 12, 2011. *See Potomac Abatement, Inc. v. Sanchez,* 421 Md. 192, 25 A.3d 1025 (2011).

We agree with the CSA that this case became moot when we decided *Sanchez I. See Sanchez,* 198 Md.App. at 444, 18 A.3d at 105. A case is moot when it does not present "a controversy between the parties for which, by way of resolution, the court can fashion an effective remedy." *Adkins v. State,* 324 Md. 641, 646, 598 A.2d 194, 197 (1991). As the Court of Special Appeals observed, "[t]he only effective remedy this Court could fashion—ordering the Commission to consider [Respondent's] post-PPD claims—is one [he] now has an unfettered right to pursue." *Sanchez,* 198 Md.App. at 444, 18 A.3d at 105. This is because, after we decided *Sanchez I,* there was no longer a case pending on appeal, and thus Respondent had no obstacle to raising his new issues before the Commission.

Nevertheless, "[t]his Court . . . is willing to decide moot questions where [i]t appears . . . that there are important issues of public interest raised which merit an expression of our views for the guidance of courts and litigants in the future." *Robinson v. Lee,* 317 Md. 371, 376, 564 A.2d 395, 397 (1989). Yet "only where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest" will we make such a "departure from the general rule and practice of not deciding academic questions." *Lloyd v. Bd. of Supervisors,* 206 Md. 36, 43, 111 A.2d 379, 382 (1954).

We agree with the Court of Special Appeals that this case presents a question worthy of our guidance, despite its mootness. *See Sanchez,* 198 Md.App. at 444 n. 5, 18 A.3d at 105 n. 5. Whether the Commission can hear new benefits requests pending an appeal, and if so, when, affects claimants' ability to receive proper, prompt treatment and compensation during the often long and complex healing process. Moreover, given that the Commission has reached different conclusions on this issue within this very case, it seems especially important to provide guidance to avoid future inconsistent rulings. Accord-

ingly, although we dismiss the appeal as moot, we will address the Commission's jurisdiction pending an appeal. *See Cottman,* 395 Md. at 745, 912 A.2d at 629 ("While we have, on prior occasions, discussed our view on the merits of moot questions ... we nonetheless dismissed those appeals pursuant to our mandate, as the mandate represents the judgment of the Court.")

Petitioner makes four arguments for why the Commission had no jurisdiction to consider Respondent's claims while his earlier appeals were pending. Briefly stated, these are: (1) the plain language of Section 9–742 clearly sets exhaustively the extent of the Commission's jurisdiction pending a related appeal; (2) legislative history is consistent with the plain language of Section 9–742; (3) Maryland courts have consistently applied Section 9–742, and never considered Section 9–736 in this context; and (4) to interpret Section 9–736 as granting the Commission additional jurisdiction outside of the terms of Section 9–742 is against public policy, because it will tend to create inconsistent rulings within the same case.

### Plain language of § 9–742

We turn to Petitioner's "plain language" argument first, by examining the text of Section 9–742, titled "Jurisdiction of Commission pending appeal":

(a) *In general.*—**The Commission retains jurisdiction pending an appeal to consider:**

**(1) a request for additional medical treatment and attention;**

**(2) a request for temporary total disability benefits,** provided that the covered employee's temporary total disability benefits were granted in the order on appeal, and were terminated by the insurer or self-insurer pending adjudication or resolution of the appeal; and

(2) a request for approval of a proposed settlement of all or part of a claim.

(b) *Supplemental order.—*

(1) If the Commission finds that a covered employee needs additional medical attention pending an appeal, the Commission may pass a supplemental order requiring the employer to provide additional medical treatment and attention.

(2) If the Commission finds that a covered employee's temporary total disability benefits were terminated pending adjudication or resolution of the appeal, and that the employee was temporarily totally disabled at the time of termination, the Commission may pass a supplemental order requiring the employer to provide the employee with temporary total disability benefits.

(3) If the Commission's decision to reinstate temporary total disability benefits is reversed or modified on appeal, the insurer or self-insurer shall be entitled to an offset or credit for overpayment of the temporary total disability benefits granted in the supplemental order.

(c) *Review on pending appeal.*—A supplemental order passed by the Commission under this section is subject to review on the pending appeal. (Emphasis added.)

Petitioner sees clarity in the bolded words, claiming that the section "was enacted to enumerate the limited situations in which the Commission retains jurisdiction during the pendency of an appeal." Petitioner perceives clarity notwithstanding the absence of any words to indicate that this section was intended to exclude or override jurisdiction (pending appeal) granted elsewhere in the Act. Petitioner's argument appears to rely on the interpretative canon *expressio unius est exclusio alterius,* under which statutory lists are often interpreted as exclusive, so that a court will draw the negative inference that no other items may be added. *See, e.g., Comptroller of the Treasury v. Blanton,* 390 Md. 528, 537, 890 A.2d 279, 285 (2006) ("Maryland has long accepted the doctrine of *expressio (or inclusio) unius est exclusio alterius,* or the expression of one thing is the exclusion of another."). Yet, not all statutory enumerations are limited by this canon. As we recently observed, "this particular canon of construction

should be applied with extreme caution, as [it] is not a rule of law, but merely an auxiliary rule of statutory construction applied to assist in determining the intention of the Legislature where such intention is not manifest from the language used." *Breslin v. Powell,* 421 Md. 266, 294, 26 A.3d 878, 895 (2011).[13]

Petitioner would have us ignore the much older Section 9–736, upon which Respondents rely. This section provides, in pertinent part:

(b) *Continuing powers and jurisdiction; modification.*—(1) **The Commission has continuing powers and jurisdiction over each claim under this title.**

(2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.

We are mindful that we read statutes "as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Evans v. State,* 420 Md. 391, 400, 23 A.3d 223, 228 (2011). Additionally,

Where the statute to be construed is a part of a statutory scheme, the legislative intention is not determined from that statute alone, rather it is to be discerned by considering it in light of the statutory scheme. When, in that scheme, two statutes, enacted at different times and not referring to each other, address the same subject, they must be read together, *i.e.,* interpreted with reference to one another, and harmonized, to the extent possible, both with each other and with other provisions of the statutory scheme. (Citations and quotation marks omitted.)

---

**13.** Respondent argues that this rule of construction "generally applies when the expressed thing or things are included in a single contemporary statement or act; not, as here, when the things are expressed separately from time to time and expressed to compensate for separate and specific exigencies." In Respondent's view, the canon of *expressio (or inclusio) unius est exclusio alterius* is not applicable to this dispute because the "provisions at issue in LE § 9–742 are not the product of a single expression; but the collection of *ad hoc* statutes enacted, from time to time, in response to specific situations."

*Mayor & City Council of Balt. v. Chase,* 360 Md. 121, 129, 756 A.2d 987, 992 (2000). We also bear in mind our mandate to interpret the Act "as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Montgomery County v. Deibler,* 423 Md. 54, 61, 31 A.3d 191, 195 (2011). The "Workers' Compensation Act's reopening provision is broad." *Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 475, 620 A.2d 340, 346 (1993); *see also Vest v. Giant Food Stores, Inc.,* 91 Md.App. 570, 579, 605 A.2d 627, 632 (1992) ("It is among the most liberal reopening provisions in the country[.]").[14] In light of these principles, with two sections of the Labor and Employment article that purport to give the Commission continuing powers and jurisdiction pending an appeal, we are not persuaded by Petitioner's argument that Section 9–742 plainly is the sole pronouncement of the extent of that jurisdiction.

Thus, in Judge Zarnoch's words, we have "A Tale of Two Statutes," and our job is to discern which one applies here. In resolving the ambiguity in the statutory scheme, we will address the legislative history of these sections, but first, a discussion of an important case on this topic, *Pressman v. State Accident Fund,* 246 Md. 406, 228 A.2d 443 (1967), is in order.

### The *Pressman* Case

In *Pressman,* the claimant appealed from the Commission's ruling and, while the appeal was pending, filed another set of issues with the Commission. *Id.* at 409–10, 228 A.2d at 445. The issue pending on appeal was whether a certain party had been the claimant's employer, while the issue at the new hearing was whether the defendant was the insurer. *Id.* at 409–10, 228 A.2d at 445. At the new hearing, the Commission resolved the insurance issue and the defendant appealed,

---

**14.** *See also Subsequent Injury Fund v. Baker,* 40 Md.App. 339, 345, 392 A.2d 94, 98 (1978) ("Maryland, which has one of the broadest reopening statutes, not only gives the Commission continuing jurisdiction over each case, it also invests the Commission with blanket power to make such changes as in its opinion may be justified.")

arguing that "the taking of an appeal [from the prior ruling] automatically deprived the Commission of jurisdiction to act in the matter while the appeal was pending." *Id.* at 414, 228 A.2d at 448. We disagreed, holding that the Commission retained "jurisdiction and power ... to deal with aspects of a case that were not dealt with or embraced within a decision on the other aspects which had been appealed." *Id.* at 415–16, 228 A.2d at 449.

We held that the Commission had continuing jurisdiction under the predecessor to Section 9–736, which provided that "the powers and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified." *Id.* at 415, 228 A.2d at 449 (quoting Md.Code (1957), Art. 101, § 40(c)). In 1991, that provision became Section 9–736(b), "derived without substantive change from former Art. 101, § 40(b) through (d)." *See* Chapter 8 of the Acts of 1991. Section 9–736(b) uses the same language as Section 40(c), providing that the "Commission has continuing powers and jurisdiction over each claim under this title" and that "the Commission may modify any finding or order as the Commission considers justified." § 9–736(b).

Because there is no substantive difference between the statute considered in *Pressman* and Section 9–736(b), the *Pressman* holding is instructive here. *See Jung v. Southland Corp.,* 351 Md. 165, 175 n. 12, 717 A.2d 387, 392 n. 12 (1998) ("Maryland Code (1957, 1985 Repl.Vol.), Article 101, § 40 was recodified in 1991 as Labor & Employment Article, § 9–736. The Revisor's Note indicates that it is 'new language derived without substantive change from former Art. 101, § 40(b) through (d).' Thus, interpretations of former § 40(c) are equally applicable to § 9–736(b).").

Petitioners want to distance us from *Pressman,* arguing that, there, the issue was

whether the Commission retained jurisdiction ... to consider Issues raised at the time of the original hearing and

reserved upon for later consideration. . . . [T]he Commission was essentially revising its prior Order . . . as opposed to issuing a new decision on new Issues. There is nothing in *Pressman* suggesting that the Commission should have unbridled authority pursuant to [Section 9–736 to hear] new Issues and enter new Orders while a prior Order is pending on appeal.

We do not construe *Pressman* so narrowly. To be sure, we observed in *Pressman* that the Commission had reserved the issue raised at the new hearing (insurance) in its first order. *See Pressman,* 246 Md. at 409, 228 A.2d at 445. Yet we do not read *Pressman* as limiting its holding to issues reserved in previous orders. It appears that *Pressman* mentioned the Commission's reservation of the insurance issue simply to respond to the insurer's argument that "the Commission had decided that [the employer] was uninsured by its [first order] and, having done this, cannot reverse itself[.]" *See Pressman,* 246 Md. at 414–15, 228 A.2d at 448–49. Responding to this argument, we observed:

We think it plain that the Commission did not decide that [the employer] was uninsured. . . . This is made manifest by the fact that no evidence on the point was offered or considered at the [first] hearing, by the hearing Commissioner's statement that the issue of insurance would be specially set after notice to the Fund . . . and by the fact that the issues listed in the [first order] did not include the insurance issue.

*Id.* Thus, it appears that we discussed the Commission's reservation of the insurance issue simply to show that the Commission was not attempting to "reverse itself." Whether the Commission retained jurisdiction, we said, turned on whether it had taken evidence or made a decision on the new issues at the earlier hearing:

Inasmuch as no evidence was offered on the point of insurance before the [first order] and no decision made on the issue, the Commission had jurisdiction and power to adjudicate the status of [the employer] as insured or uninsured[.]

*Id.* at 415, 228 A.2d at 449. We also described the inquiry as requiring that new issues be "independent and distinct" from the issues pending on appeal. *Id.* at 416, 228 A.2d at 449. There is simply no indication in *Pressman* or later cases that the Commission's jurisdiction under Section 9–736(b) is limited to issues reserved for later consideration.[15] Nor does the language of Section 9–736 suggest such a limitation. Keeping our *Pressman* decision in mind, we now look for insight from the legislative history of these competing statutes.

### Legislative History

In his brief, Respondent takes us through the history of the more recent statute, Section 9–742, which was originally enacted in 1966 as an amendment to Art. 101, Section 56(a) (the Worker's Compensation Act or "WCA"). *See* Chapter 298 of

---

15. Petitioners contend that the "independent and distinct" inquiry is a "discretionary rule that does not create ... an objective standard and, instead, leaves the door open for a continuing flood of new Issues being litigated before the Commission while a prior Order or Orders are pending on appeal." This argument over-emphasizes the words "independent and distinct," as though in each case the Commission were supposed to decide how similar or different each set of issues is. To say that issues are "independent and distinct," however, is simply another way of describing issues on which no "evidence was offered" or "decision made" at the previous hearing. *Pressman v. State Accident Fund*, 246 Md. 406, 415–16, 228 A.2d 443, 449 (1967). Indeed, the words "independent and distinct" appear in *Pressman* only in an extended quote from a case providing persuasive authority. *See id.* at 416, 228 A.2d at 449.

Additionally, as the facts of *Pressman* itself demonstrate, the "independent and distinct" inquiry is not designed to prevent "new issues being litigated before the Commission while a prior Order or orders are pending on appeal." Rather, as confirmed by the two cases cited in *Pressman*, the "independent and distinct" inquiry is designed to prevent the appeals court and Commission from issuing inconsistent verdicts on the same issue. *See id.* (citing *State ex rel. Hatfield v. Indus. Com. of Ohio*, 165 N.E.2d 211, 216 (Ohio Ct.App.1960) ("[T]he lower court retains all jurisdiction **not inconsistent with that of the appellate court** to review, affirm, modify or reverse the final order, judgment or decree from which the appeal has been perfected." (emphasis added)); *Jones v. Schenectady Boys Club, Inc.*, 276 A.D. 879, 93 N.Y.S.2d 764 (N.Y.App. Div.1949) ("When the board's continuing jurisdiction **conflicts with** a prior judicial determination, it may act only in a changed situation[.]" (emphasis added))).

the Acts of 1966; Md.Code (1966), Art. 101, § 56(a). As Respondent explains, the WCA was amended almost annually, and "[v]arious sections of Article 101 of the 1957 Maryland Code that were existent in 1990 were repealed and reenacted into [the most relevant] sections of Title 9 of LE: 'Workers' Compensation'."

The provision remained in Article 101, Section 56(a) until 1991, when it was recodified in the Labor and Employment Article. *See* Chapter 8 of the Acts of 1991. As explained in the Revisor's Note to Section 9–742, the portion of Article 101 that became Section 9–742 was the ninth sentence of Art. 101, Section 56(a). That sentence provided:

In the event a Claimant needs additional medical attention pending any appeal as provided herein, the Commission shall retain jurisdiction to entertain a request for additional medical treatment and attention and may issue a supplemental order requiring the employer to furnish additional medical treatment and attention, which order is subject to review on the pending appeal.

As the Court of Special Appeals described it, this predecessor to Section 9–742

was neither a free-standing nor an obvious exclusive jurisdiction statute. Rather, the legislation consisted of a single sentence and a single clause planted within a jungle of provisions dealing with appeals from Commission decisions.

*Sanchez,* 198 Md.App. at 447, 18 A.3d at 107. As part of Section 56(a), that sentence was not an exclusive provision of jurisdiction pending appeal. Indeed, other portions of Art. 101 discussed jurisdiction pending an appeal in other circumstances. For example, the tenth sentence of Section 56(a) provided that "an appeal shall not be a stay," and as discussed in *Pressman,* Section 40(c) provided that the Commission's "powers and jurisdiction ... over each case shall be continuing[.]" *Pressman,* 246 Md. at 415, 228 A.2d at 449.

As Judge Zarnoch wrote, "[t]his 'additional medical treatment and attention' language was transformed by the 1991 revision of the LE Article into an apparently self-contained

provision," designated as Section 9–742. *Sanchez,* 198 Md. App. at 448, 18 A.3d at 107–08. According to the Revisor's Note, this transformation was done "without substantive change[.]" Chapter 8 of the Acts of 1991. But as the CSA observed, despite this Revisor's Note,

the appearance of the statute had dramatically altered. Despite the absence of language of exclusivity, § 9–742 seemed to look a little more like a candidate for the *expressio unius* canon.

*Sanchez,* 198 Md.App. at 449, 18 A.3d at 108. On the other hand, we cannot ignore Section 9–736 or our decision in *Pressman* interpreting it as granting the Commission broad, continuing jurisdiction pending appeal. Thus, to harmonize these two sections and avoid rendering either superfluous, we assume that there is a difference between the jurisdiction provided by Section 9–742 and the jurisdiction provided by Section 9–736.

*Petitioner's Cases and its Legislative History Arguments*

Countering Respondent's view of the legislative history, Petitioners aver that certain cases interpreting Section 9–736 and its predecessor demonstrate that it does not provide jurisdiction pending an appeal. They cite *Union Mining Co. v. Del Signora,* 191 Md. 55, 61, 59 A.2d 771, 773 (1948), which held:

After the Commission made the award in this case, and no appeal was taken therefrom, it retained jurisdiction over the matter because section 66 [16] provides that thereafter its jurisdiction was continuing.

Petitioners contend that the language "and no appeal was taken therefrom" demonstrates that Section 9–736(b) does not apply when an appeal is pending. Yet even if the Court's language meant that the Court considered the Commission's jurisdiction pending an appeal to be so limited, such a holding

---

**16.** Md.Code Art. 101 (1939), § 66, the predecessor to Art. 101 (1957), § 40(c), with identical language. *See Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 473–74, 620 A.2d 340, 345–46 (1993).

was overruled by *Pressman*. *Pressman* was decided nineteen years later and held that, under Section 9–736(b), the Commission retains jurisdiction pending an appeal, so long as no evidence was taken or decision made on the issues presented at the new hearing. *See Pressman*, 246 Md. at 415–16, 228 A.2d at 449.[17]

■ The Petitioners additionally posit that "[n]owhere in the legislative history ... is there any indication that the Legislature intended for [Section] 9–736 to have any effect on Commission jurisdiction during the pendency of an appeal." Yet *Pressman*, which held that Art. 101, Section 40(c) provides jurisdiction during the pendency of an appeal, had been published for 24 years when Section 40(c) was codified as Section 9–736(b). The Legislature "is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law." *Mayor & City Council of Balt. v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984). If the Legislature, knowing about *Pressman's* interpretation of Art. 101, Section 40(c), intended to supersede that case, it would have done so more clearly. *See Burch v. United Cable Tv. of Balt. Ltd. P'ship*, 391 Md. 687, 702, 895 A.2d 980, 988 (2006) ("The presumption ... that the Legislature acts with the knowledge of existing laws, coupled with the later statute's failure to mention the existing law, is an indication that the Legislature intended that the existing law remain viable[.]" (citations omitted)). Indeed, far from modifying Section 40(c) to overrule *Pressman*, the Legislature explicitly stated that it was recodifying it "without substantive change." Chapter 8 of the Acts of 1991. Nothing in the legislative history indicates that the Legislature intended to overrule *Pressman* when it recodified Section 40(c) as Section 9–736(b).

---

17. Additionally, Petitioners' argument appears to prove too much, as presumably even Petitioners would not argue that the Commission would lack jurisdiction if an appeal were taken and concluded before new issues were filed.

*Reconciling Sections 9–742 and 9–736*

The vexing problem remains that we need to reconcile the two sections, or explain how they are different in application. The Court of Special Appeals proposed two such possibilities, declining to decide which is correct:

> At least two possibilities occur to us: 1) retained jurisdiction is mandatory under § 9–742, but discretionary under § 9–736(b); and 2) jurisdiction is retained under § 9–736(b) only if the matter is independent and distinct from the issues on appeal, while such a condition is not imposed on jurisdiction retained under § 9–742. (Footnote omitted.)

*Sanchez,* 198 Md.App. at 451–52, 18 A.3d at 109. Petitioners suggest a third option: When an appeal is pending, Section 9–736 provides continuing jurisdiction only over issues that the Commission previously reserved for further consideration. If the Commission has not reserved the issue and an appeal is pending, they argue, only Section 9–742 can provide jurisdiction.

We think the correct explanation is close to the CSA's second suggestion above. Under Section 9–736, the salient limitation on jurisdiction pending an appeal is that no evidence was taken or decision made at the previously appealed hearing on the issues presented at the new hearing. *See Pressman,* 246 Md. at 414–15, 228 A.2d at 448–49. This limitation reduces the possibility of inconsistent verdicts, because it ensures that the new issues are not also being argued on appeal. *See id.* Yet, as the Petitioners acknowledge, sometimes an issue is "so important" that the potential for inconsistent verdicts pales in comparison to the possibility that the claimant may not be able to seek relief at all. Thus, we agree with the Petitioners that, after the Legislature "heard testimony, read reports, and carefully weighed the impact of permitting the Commission to retain jurisdiction[,]" it decided that two situations were important enough to allow jurisdiction despite the possibility of inconsistent verdicts—namely, requests for medical treatment and reinstatement of discontinued TTD benefits. These are the provisions that were added in

1966 as the ninth sentence of Art. 101, Section 56(a), now codified as Section 9–742. *See* Chapter 298 of the Acts of 1966; Chapter 8 of the Acts of 1991.

Because Section 9–742 is limited to a small number of issues, it need not contain the requirement of Section 9–736, stated in *Pressman,* that the new issues and the appealed issues be "independent and distinct." *Pressman,* 246 Md. at 415–16, 228 A.2d at 449. We think this interpretation best demonstrates how the two provisions are harmonized, and why Section 9–742 is not superfluous in light of Section 9–736.

Nevertheless, Petitioners urge us to consider two House bills amending portions of Section 9–742. Petitioners aver that these House bills demonstrate that Section 9–742 is the exclusive provision of the Commission's jurisdiction pending an appeal. The Fiscal Note to House Bill 63 of 1997, which added subsection (d) to Section 9–742 to expand the Commission's jurisdiction when the only issue on appeal is a penalty, explained that the new subsection was necessary because "[u]nder current law the Commission retains jurisdiction pending an appeal only to consider a request for additional medical treatment and attention." House Bill 63 1997, Fiscal Note. Similarly, the Senate Finance Committee's summary of House Bill 612 of 2000, which amended Section 9–742(a) to include certain claims regarding TTD benefits, explained that previously the Commission retained jurisdiction pending an appeal "only . . . to consider a request for additional medical treatment and attention." House Bill 612 2000, Senate Finance Committee Summary.

 We cannot rule out the possibility that some members of the Legislature, in 1997 and 2000, believed Section 9–742 was the exclusive provision of the Commission's jurisdiction pending an appeal. Nevertheless, "a statement by present members of a legislative body, as to what their predecessors intended in a statute enacted several years previously, is not entitled to much weight." *Wash. Nat'l Arena Ltd. P'ship v. Treasurer, Prince George's County,* 287 Md. 38, 54 n. 7, 410 A.2d 1060, 1069 n. 7 (1980); *see also Collier v. Connolley,* 285

Md. 123, 126, 400 A.2d 1107, 1108 (1979) ("[W]e do not place much weight upon what the Legislature, in 1977, said was intended in a 1974 statute.").

Moreover, we do not think these statements establish that the Legislature considered Section 9–742 to be the exclusive provision of jurisdiction pending an appeal. Rather, the Finance Committee's summary, read alongside House Bill 612 of 2000, appears simply to show that the Legislature believed Section 9–742 itself was too narrow. It does not purport to limit the Commission's continuing jurisdiction outside of Section 9–742, nor does it reference Section 9–736 or *Pressman*. Indeed, if the two provisions work "in tandem" as we have described (Section 9–736 being limited to "independent and distinct" issues and Section 9–742 eschewing such limitation), then the bills amending Section 9–742 likely reflect the Legislature's consideration of which kinds of situations merit jurisdiction despite the possibility of inconsistent verdicts, not whether the Commission can retain jurisdiction outside of those instances.[18] In this context, we think the house bills that Petitioners mention should be read narrowly, pertaining only to Section 9–742, and not to the Commission's jurisdiction overall.[19]

---

**18.** We think the same is true of Senate Bill 269 of 2011 and House Bill 453 of 2011, which amended Section 9–742 to allow jurisdiction pending an appeal to hear requests for "approval of a proposed settlement." *See* Chapters 45–46 of the Acts of 2011.

**19.** Indeed, the Senate Finance Committee's summary of House Bill 612 not only failed to consider the provision of continuing jurisdiction under Section 9–736, but also failed to consider other jurisdictional provisions within Section 9–742 itself. It stated that its revisions to Section 9–742 were necessary because previously the Commission had retained jurisdiction pending an appeal "only to consider a request for additional medical treatment." House Bill 612 2000, Senate Finance Committee Summary. Yet just three years earlier, subsection (d) had been added to provide continuing jurisdiction over "all matters in the case other than imposition of the penalty" when the only issue on appeal was a penalty. Chapter 641 of the Acts of 1997. Given that the Legislature failed to take into account a jurisdictional provision within the subsection it was amending, there is little reason to think that it intended to negate all other jurisdictional provisions in the Workers' Compensation Act.

Finally, our interpretation is consonant with a number of treatises addressing workers' compensation schemes. One such treatise states:

> In view of the nature and purposes of workers' compensation, it is to be expected that the law would place less emphasis on the finality of an award of benefits than is accorded the judgment of a court in ordinary private litigation. . . . The most common reason for reconsideration . . . is that there has been a change in the claimant's physical condition that affects his disability for better or for worse or terminates it.

Wex S. Malone et al., *Workers' Compensation and Employment Rights* 415–16 (2d. ed.1980). Malone also points out that in New York and Utah, modification of an award is permitted whenever the commission considers it justified, and in California modification is permitted "for any good cause." *Id.* (citing N.Y. Workmen's Comp. Law § 123 (McKinney) (current version at N.Y. Worker's Comp. Law § 123 (McKinney)); Utah Code Ann. § 35-1-78 (current version at Utah Code Ann. § 34A-2-420(b)); Cal. Lab.Code § 5803 (West)); *see also* Jack B. Hood et al., *Workers' Compensation and Employee Protection Laws in a Nutshell* 167 (5th ed.2011) ("[R]eopening and modification is usually permitted on the basis of a disabled worker's changed condition.").

As to why such modification is generally allowed, Larson's Workers' Compensation Law states:

> [T]he objectives of the legislation are best accomplished if the commission can increase, decrease, revive, or terminate payments to correspond to a claimant's changed condition. Theoretically, then, **commissions ought to exercise perpetual and unlimited jurisdiction** to reopen cases as often as

---

Petitioners also contend that language in the 1997 amendment stating that Section 9–742 was enacted to "generally relate" to the Commission's jurisdiction "shows that the Legislature intended for only [Section 9–742] to govern the Commission's jurisdiction while a prior Order was pending on appeal." *See* Chapter 641 of the Acts of 1997. We know of no case holding that the words "generally relate" create a presumption of exclusivity.

necessary to make benefits meet current conditions. But the **administrative and practical difficulties** of such a course have led to severe limitations on the power to reopen and alter awards. (Emphasis added.)

8 Lex K. Larson, *Larson's Workers' Compensation Law* § 131.01 (Rev. ed.); *see also* 2 Mark A. Rothstein et al., *Employment Law* § 7.34 (4th ed.2009) (observing that the few statutes containing "language precluding the reopening, due to changed conditions, of awards" can "generate harsh results").

Although we cannot say that the Commission exercises "perpetual and unlimited jurisdiction," we believe Larson appropriately captures the legislative goal evident in the Maryland statutory scheme. *See Deibler*, 423 Md. at 61, 31 A.3d at 195 (observing that we must interpret the Act "as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes"). No question, "administrative and practical difficulties" can arise, which explains *Pressman's* "independent and distinct" limitation and the narrow scope of Section 9–742. But in the case of new issues filed pending an appeal, *Pressman's* limitation reduces, to an acceptable risk level, the most significant practical difficulty—namely, the possibility of inconsistent verdicts.

Applying these principles to the case at hand, we think Respondent should be entitled to a hearing on his new issues under Section 9–736(b), so long as no "evidence was offered" or "decision made" on those issues at the previously appealed hearings. In *Sanchez II*, Respondent requests that the Commission decide whether he is entitled to TTD benefits from January 9, 2008, to June 11, 2008. No "evidence was offered" or "decision made" on that issue at the earlier hearing, *Sanchez I*, because that hearing was concluded on July 31, 2006, and discussed benefits during periods between August 2005 and January 2006. *See Sanchez*, 417 Md. at 78, 8 A.3d at 738. Similarly, in *Sanchez III*, Respondent requests that the Commission decide whether he is entitled to vocational rehabilitation in light of a doctor's prescription dated May 5, 2009. Vocational rehabilitation was not discussed in *Sanchez I*

or *Sanchez II.* Thus, this case falls within *Pressman's* holding, which provides continuing jurisdiction, under Section 9–736(b), over "aspects of a case that were not dealt with or embraced within a decision on other aspects which had been appealed." *Pressman,* 246 Md. at 415–16, 228 A.2d at 449.

Petitioners protest that the risk of inconsistent verdicts is unacceptably high in this situation:

> Vocational rehabilitation services are provided to a claimant who is ready, willing, and able to work and is attempting to return to suitable gainful employment. On the other hand, temporary total disability benefits are awarded to a claimant who is wholly unable to work for a period of time immediately following a work-related injury. Thus, these two types of benefits are in direct conflict with one another. (Citations omitted).

Although this argument might counsel against allowing a claimant to seek vocational rehabilitation and TTD at the same time,[20] it does not counsel against a second hearing when, as here, the claimant's requests for TTD and vocational rehabilitation cover different periods of time. It makes sense that once a claimant recovers to the point that TTD is no longer appropriate, he should try, if he is able, to rehabilitate himself so that he can return to work. *See* § 9–670(e)(1) (" 'Vocational rehabilitation services' means professional services reasonably necessary during or after or both during and after medical treatment to enable a disabled covered employee, as soon as practical, to secure suitable gainful employment.").

Indeed, in cases such as this one, the equities appear to lie mostly with the claimant. As was argued by the Maryland Association for Justice, an amicus in this case,

> Allowing jurisdiction over issues not raised or decided in an award pending appeal is also consistent with the benevolent purposes of the Act. Once an appeal is filed, if the Commission is divested of jurisdiction ... claimants would face the prospect of waiting years, while the appeal is pending,

---

20. We take no position on this question.

before obtaining additional benefits. One has only to look at the facts of this case for an example of the harsh result of narrowly construed post-appeal jurisdiction. A claimant who appealed an award entered in January of 2008 would have to wait until November of 2010, when this Court decided his appeal, before obtaining any workers' compensation benefits.

* * *

Employers/Insurers, under this miserly standard, are encouraged to file appeals. Once an appeal is noted, the claimant cannot get further benefits, other than medical care or temporary total [benefits] reinstated.... The opposite is true of incentives for the claimant to appeal. An injured worker dissatisfied with a Commission award, if there is no continuing jurisdiction, must not only consider the cost of taking an appeal, but the fact that noting the appeal will preclude access to the Commission, until the appeal is over.

These considerations, along with the broad interpretation we embraced in *Deibler*, serve to support the conclusion that Section 9–736(b) provides continuing jurisdiction pending an appeal. *See also* Rothstein, et al. at §§ 7.33, 34 ("It is generally recognized that workers' compensation systems were established to assist individuals who are not likely to be knowledgeable regarding technical legal procedures. As a result, administrative agencies apply liberal procedural rules designed to enhance worker coverage.... **Courts recognize that state legislatures did not intend to permit technical procedural doctrines to defeat bona fide workers' compensation claims.**" (emphasis added)).

### Conclusion

■ Under Section 9–736(b), the Commission retains jurisdiction pending an appeal over issues on which no evidence was taken or decision made at the previously appealed hearings. Section 9–742 is no impediment to such jurisdiction. For the foregoing reasons, we hold that the Commission had jurisdiction to decide Respondent's new issues pending his

previous appeals. Following the conclusion of such appeals, however, the case became moot, as there was no impediment to the Commission's jurisdiction.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; APPEAL DISMISSED AS MOOT; PETITIONERS TO PAY COSTS.**