740 A.2d 594

**SEALY FURNITURE OF MARYLAND, et al.**

v.

**Brenda MILLER.**

**No. 36, Sept. Term, 1999.**

Court of Appeals of Maryland.

Nov. 10, 1999.

W. John Vernon (Lord & Whip, P.A., on brief), Baltimore, for petitioners.

Anne E. Hoke (Ingerman & Horwitz, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL, and THEODORE G. BLOOM (retired, specially assigned), JJ.

WILNER, Judge.

Apparently through oversight, an employer continued to make temporary total disability payments to a workers' compensation claimant after the employer became aware that the claimant had reached maximum medical improvement and was therefore no longer eligible for those payments. It sought to recover the overpayment through a credit against permanent partial disability benefits subsequently awarded to the claimant. This appeal presents the single issue of whether the Workers' Compensation Commission is authorized to order

such a credit. We shall hold that it does not have that authority.

## BACKGROUND

In April, 1989, respondent, Brenda Miller, filed a workers' compensation claim, alleging that her right hand had become swollen from pulling fabric while employed with petitioner, Sealy Furniture of Maryland. In an order entered a month later, the Workers' Compensation Commission found that Ms. Miller had sustained an accidental injury arising out of her employment and directed Sealy to pay temporary total disability benefits from and after January 12, 1989, the date of disablement.[1] In June, 1990, it was agreed that Ms. Miller was unable to continue her regular employment and the parties developed a vocational rehabilitation plan. On July 10, 1990, the Commission approved the stipulated rehabilitation plan and ordered Sealy to pay temporary total disability benefits of $273/week "during the continuance of claimant's period of vocational rehabilitation."[2]

After a number of unsuccessful attempts to obtain employment, Ms. Miller, with the consent of the rehabilitation counselor, decided to become a day care provider for children two years old or older. To that end, various modifications were made to her home, and she applied for a license from the Department of Human Resources. In June, 1994, she received what she claimed was a provisional license contingent upon completion of a fingerprint check by the Maryland State Police, a check that she said was not completed until some time in 1995. The record reveals, however, that in August, 1994, she received a certificate from the Department's Child Care Administration stating that she was registered to operate a family child care home to care for children from ages two

---

1. The parties agree that the reference to accidental injury is a mistake. Ms. Miller claimed an occupational disease—carpal tunnel syndrome.

2. Maryland Code Lab. & Empl., § 9–674(b) provides that, while an employee is receiving vocational rehabilitation services, the employer/insurer shall pay compensation to the employee as if the employee was temporarily totally disabled.

to seven for a two-year period commencing August 30, 1994. Although the certificate was conditioned on continued compliance with applicable departmental regulations, it said nothing about any further State Police investigation. In any event, Ms. Miller never commenced a day care operation and never obtained other suitable employment. She said that she was unable to find children to watch.

On August 11, 1994, the parties were notified that vocational rehabilitation services had been terminated. On August 25, Sealy had Ms. Miller evaluated and concluded that she had reached maximum medical improvement. Nonetheless, for reasons which are unexplained in the record and were a mystery to Sealy's counsel, Sealy continued to pay temporary total disability benefits in the amount of $261/week until February 1, 1995.[3] On February 3, 1995, Sealy sent Ms. Miller a Termination of Temporary Total Disability notice, informing her that she had reached maximum medical improvement on August 25, 1994, and that temporary total disability payments would cease as of February 1. Issues were then filed regarding permanent partial disability.

In June, 1996, a hearing was held on those issues. In an order entered June 12, 1996, the Commission found that Ms. Miller had a permanent partial disability of 15% loss of use of the right hand. Sealy did not contest that finding but did request a credit for the temporary total disability payments made between August 25, 1994 and February 1, 1995—a total of $5,872 (22.5 weeks × $261). In its order awarding permanent partial disability benefits of $82.50/week for 37.5 weeks, a total of $3,093, the Commission allowed the credit sought by Sealy, the effect of which was to excuse any further payment.

Aggrieved by that result, Ms. Miller sought judicial review in the Circuit Court for Wicomico County. On the issue of whether the Commission was authorized to allow the credit, the court granted Sealy's motion for summary judgment. Trial was then held on the degree of disability, which the jury

---

3. The discrepancy between the $261/week that was paid and the $273/week that was ordered is not explained in the record.

increased from 15% to 25%, thereby adding $2,062 to the award. Because of the credit, however, Ms. Miller would still have received no permanent partial disability benefits. The credit exceeded the total award by $716 (credit of $5,872 less total award of $5,156). Ms. Miller appealed to the Court of Special Appeals.

Citing its earlier decision in *Montgomery County v. Lake,* 68 Md.App. 269, 511 A.2d 541 (1986) and our decision in *Philip Electronics v. Wright,* 348 Md. 209, 703 A.2d 150 (1997), the Court of Special Appeals concluded that the Commission had no authority to set off an overpayment of one kind of award against benefits payable under a separate award and therefore reversed that part of the judgment of the circuit court. *Miller v. Sealy,* 125 Md.App. 178, 724 A.2d 743 (1999). We granted Sealy's petition for *certiorari* to address the question noted and shall affirm the ruling of the Court of Special Appeals.

## DISCUSSION

In *St. Paul Fire & Mar. Ins. v. Treadwell,* 263 Md. 430, 283 A.2d 601 (1971), we held that when, as the law requires, an employer pays workers' compensation benefits in accordance with a Commission award pending judicial review of that award and the reviewing court later vacates the award, the employer is not entitled to reimbursement for the amount paid under the award. In light of the statutory provision precluding any stay of the Commission's award pending judicial review, we concluded that the Legislature must have foreseen the possibility that payments would be made to claimants whose awards were later reduced or vacated, and that it made no provision in the law for the recovery of those payments. Notwithstanding the "unjust enrichment" argument made by the employer, we discerned a legislative intent "to preclude 'recovery back' upon any theory, except fraud perhaps." *Id.* at 439, 283 A.2d at 606. *See also Hoffman v. Liberty Mutual,* 232 Md. 51, 191 A.2d 575 (1963).

We confirmed that view more recently in *Philip Electronics v. Wright, supra,* 348 Md. 209, 703 A.2d 150. In that case, the reviewing court reduced, rather than vacated, the

Commission award, which still had 53 weeks to run, and the question was whether the employer was entitled to credit against its new obligation for the entire amount it had paid to that point under the Commission's award or only a credit for the number of weeks for which the compensation had already been paid. Applying the principles enunciated in *Treadwell,* we opted for the latter, holding that "[t]he fair inference is that the General Assembly, having made no provision allowing an employer to offset payments made prior to the reduction of an award against subsequent, recalculated benefits, considered and rejected such a possibility." *Id.* at 223, 703 A.2d at 156. It is established, then, that when an overpayment arises from the payment of benefits pending judicial review, the employer is not entitled to recover any part of the overpayment, either directly from the employee or in the form of a credit against a continuing obligation to pay benefits. A major underpinning of that rule is the "no stay" provision of the statute.

There are, of course, a variety of other circumstances that also might lead to an overpayment of benefits, to which the "no stay" provision has no relevance. This is such a case, and there are others, some of which are noted by RICHARD P. GILBERT & ROBERT L. HUMPHREYS, JR., MARYLAND WORKERS' COMPENSATION HANDBOOK, § 7.14 (1988). At least as to this case, Sealy looks to § 9–736(b) of the Labor and Employment Article, vesting the Commission with "continuing powers and jurisdiction over each claim under this title." That section, it urges, grants the Commission very broad power to reopen and modify previous awards and, as part of that authority, permits the Commission to credit the overpayment of temporary total disability benefits against the award of permanent partial disability benefits.

There are two fallacies in that argument. The first is that, in granting the credit at issue here, the Commission was not purporting to exercise any discretion or authority under § 9–736. It was not reopening or modifying the award of temporary total disability benefits or revisiting any finding it had made with respect to that claim. That award, by its own terms, lasted only "during the continuance of claimant's

period of vocational rehabilitation," and, when that period ended, so did the award and Ms. Miller's entitlement to the benefits under it. What the Commission did was to credit an overpayment of temporary total disability benefits against a new, separate, subsequent award of permanent partial disability benefits. Second, although the revisory power of the Commission under § 9–736 is broad, it is not unlimited. The Commission may not disregard other legislative directives, *Jung v. Southland Corp.*, 351 Md. 165, 717 A.2d 387 (1998), or, indeed, the construction of the workers' compensation law by this Court. The credit ordered by the Commission in this case directly contravened a line of cases beginning with *Gorman v. Atlantic Gulf & Pac. Co.*, 178 Md. 71, 12 A.2d 525 (1940) and continuing through *City of Baltimore v. Oros*, 301 Md. 460, 483 A.2d 748 (1984).

*Oros* is particularly instructive. In three separate cases, Baltimore City police officers who sustained accidental injuries arising out of their employment filed workers' compensation claims and were awarded temporary total disability benefits. In accordance with an accidental leave provision in a collective bargaining agreement, however, they continued to receive their regular salaries during the period of their temporary total disability and, in each case, the salaries exceeded the compensation benefits payable under the award. By virtue of then Article 101, § 33(c) (current Labor and Employment Article, § 9–610), the City was entitled to a credit against the award of temporary total disability benefits for the continued salary payments, and, as a result, it appears that no actual temporary total disability payments were made. When the officers reached maximum medical improvement, they each sought and received permanent partial disability payments but, in two cases, the Commission credited against those benefits the amounts by which the salaries paid during the accidental leave exceeded the temporary total disability compensation rate. The issue before us was whether such a credit was permissible.

Relying on *Gorman* and subsequent cases, which established that temporary total disability, temporary partial dis-

ability, permanent total disability, and permanent partial disability are different compensable events, each justifying a separate award, we concluded that the law did not permit an overpayment of one kind of benefit to be credited against the award of another kind of benefit. We noted that the City's argument to the contrary "flies in the teeth of the basic legislative design—that an injured worker ... is entitled to receive seriatim the benefits for each of the separate disabilities as were caused by the nature and extent of his injury." *Id.* at 470, 483 A.2d at 753. *See also Newman v. Subsequent Injury Fund,* 311 Md. 721, 726, 537 A.2d 274, 276 (1988), in which we characterized our holding in *Oros* as being that "two distinct workmen's compensation obligations may not offset one another where there is an excess payment under the first of the two obligations."

Other courts have reached similar conclusions. In *Matter of Johner,* 643 P.2d 932 (Wyo.1982), a Wyoming district court, which apparently administers that States workers' compensation program, concluded in 1981 that a claimant receiving temporary total disability benefits had reached maximum improvement a year earlier. The court terminated the temporary total disability payments and offset the year's overpayment against any future permanent partial disability award. The Wyoming Supreme Court reversed that aspect of the judgment as being in excess of the district court's authority, noting, at 935, that "[t]he courts generally feel that allowing recoupment of benefits previously paid and utilized by the worker with a good-faith claim would defeat the general purpose of worker's compensation statutes which are designed and meant to assist and protect the injured employee through the recovery process." *See also Deal v. Department of Labor and Industries,* 78 Wash.2d 537, 477 P.2d 175 (1970); *Kerans v. Industrial Com'n of State of Utah,* 713 P.2d 49 (Utah 1986); and *Montgomery County v. Lake, supra,* 68 Md.App. 269, 511 A.2d 541, where the Court of Special Appeals held that an employer was not entitled to recover or set off an overpayment on one claim against benefits awarded under a separate claim for a different injury.

We have observed on a number of occasions that there are circumstances in which the overpayment of benefits do, indeed, create at least the illusion and maybe the reality of an unjust enrichment, but we have consistently held, as have the courts in other States, that that prospect is implicit in the overall legislative scheme and, if it is to be corrected by allowing a recovery, either directly or in the form of a credit against another award, the Legislature will have to provide that correction. Indeed, the General Assembly has addressed this very problem, but not in a way that is of any assistance to Sealy in this case. In 1993, the Legislature enacted § 9–310.1 of the Labor and Employment Article, which permits the Commission, if it finds that a person has *knowingly* obtained benefits to which the person was not entitled, to order the person to reimburse the employer for the amount of those benefits. There was no claim or finding here that Ms. Miller knowingly received benefits to which she was not entitled. Absent such a finding by the Commission, there was no statutory basis for ordering the credit.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.