*Peter Gang v. Montgomery County, Maryland*, No. 67, September Term, 2018. Opinion by Battaglia, J.

**WORKERS' COMPENSATION ACT – MD. CODE (1991, 2016 REPL. VOL.), § 9-736 LAB. & EMPL. ART. – CONTINUING POWERS AND JURISDICTION; MODIFICATION OF PREVIOUS ORDERS AND AWARDS**

Court of Appeals held that the Workers' Compensation Commission had the authority to reopen an injured employee's award of permanent partial disability compensation and retroactively adjust the rate of compensation therein because the request for such, which was made within five years from the date of the employee's last compensation payment, was based on a mistake or error.

Court of Appeals held that Section 9-736(a) of the Labor and Employment Article, the subsection which governs the readjustment of a rate of compensation in cases of aggravation, diminution or termination of disability, does not limit or otherwise restrict the jurisdiction of the Workers' Compensation Commission to modify its previous findings, orders or awards under Section 9-736(b), provided the modification sought is applied for within five years after the date of the accident, the date of disablement or the last compensation payment.

Court of Appeals held that claimant had not waived right to request a higher rate of compensation by failure to appeal, seek judicial review pursuant to Section 9-737 of the Labor and Employment Article, or failing to file a motion for rehearing pursuant to Section 9-726 of the Labor and Employment Article, where the modification had been applied for within the statutory period of limitations.

Court of Appeals held that the claimant's failure to strictly comply with the procedures of the Workers' Compensation Commission for submitting a modification application did not defeat claimant's ability to apply for relief.

Court of Appeals held that the claimant's application for the correction of the rate of compensation received from the permanent partial disability award did not impermissibly prolong the statute of limitations because the application for modification had been filed before the five-year period of limitations had expired.

Circuit Court for Montgomery County
Case No.: 423509V
Argued: April 5, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 67

September Term, 2018
_____

PETER GANG

v.

MONTGOMERY COUNTY, MARYLAND
_____

Barbera, C.J.,
Greene,
McDonald,
Watts,
Hotten,
Getty,
Battaglia, Lynne, A. (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Battaglia, J.
_____

Filed: June 24, 2019

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In this worker's compensation case, Officer Peter Gang, the Petitioner herein, was injured while working as a correctional officer for Montgomery County, the Respondent herein. We have been called upon to interpret Section 9-736 of the Labor and Employment Article, Maryland Code (1991, 2016 Repl. Vol),[1] and consider whether the Workers' Compensation Commission is statutorily authorized to modify an order that provided Officer Gang a compensation award for a permanent partial disability resulting from his workplace injury, by retroactively adjusting the rate of compensation as a result of his application within the five-year statutorily defined period of time. The Commission adjusted the rate of compensation because, as a public safety employee, Officer Gang had been entitled to a higher rate of compensation than that which he initially received, a fact that is not in dispute.

On judicial review, the Circuit Court for Montgomery County affirmed the decision of the Commission, but the Court of Special Appeals reversed, holding that the Commission was not statutorily authorized to retroactively modify Officer Gang's rate of compensation. *Montgomery Cty. v. Gang*, 239 Md. App. 321, 196 A.3d 533 (2018). For the reasons that follow, we shall hold that the Commission may modify the compensation award within five years from the date of the last compensation payment under Section 9-736(b) of the Workers' Compensation Act.

---

[1] Unless otherwise indicated, all statutory references hereinafter are to the Workers' Compensation Act ("Act"), Sections 9-101 through 9-1201 of the Labor and Employment Article, Maryland Code (1991, 2016 Repl. Vol.). The Act is currently codified as Sections 9-101 through 9-1201 of the Labor and Employment Article, Maryland Code (1991, 2016 Repl. Vol, 2018 Supp.); we refer to the version relevant to the instant case.

On September 17, 2011, Officer Peter Gang was injured while working as a Montgomery County correctional officer and, subsequently, filed a claim with the Workers' Compensation Commission ("Commission"), seeking compensation. The Commission held a hearing to determine the nature and extent of Officer Gang's injury under the Workers' Compensation Act ("the Act"),[2] and, thereafter, in May of 2012, issued

---

[2] The pertinent provision which governs claims, Section 9-709 of the Labor and Employment Article, applicable to Officer Gang's claim and today, provides:

(a) *Filing claim – In general; authorization for release of relevant medical information.* – (1) Except as provided in subsection (c) of this section, if a covered employee suffers an accidental personal injury, the covered employee, within 60 days after the date of the accidental personal injury, shall file with the Commission:
(i) a claim application form; and
(ii) if the covered employee was attended by a physician chosen by the covered employee, the report of the physician.
(2)(i) A claim application form filed under paragraph (1) of this subsection shall include an authorization by the claimant for the release, to the claimant's attorney, the claimant's employer, and the insurer of the claimant's employer, or an agent of the claimant's attorney, the claimant's employer, or the insurer of the claimant's employer, of medical information that is relevant to:
1. the member of the body that was injured, as indicated on the claim application form; and
2. the description of how the accidental personal injury occurred, as indicated on the claim application form.
(ii) An authorization under subparagraph (i) of this paragraph:
1. includes the release of information relating to the history, findings, office and patient charts, files, examination and progress notes, and physical evidence;
2. is effective for 1 year from the date the claim is filed; and
3. does not restrict the redisclosure of medical information or written material relating to the authorization to a medical manager, health care professional, or certified rehabilitation practitioner.

(continued . . .)

an Award of Compensation, providing Officer Gang recompense "at the rate of $157.00, payable weekly, beginning October 21, 2011, for a period of 70 weeks" based on a 14% industrial loss of the use of his body, which was attributable to the accidental injury.

Nearly four years later, Officer Gang filed a form entitled "Request for Document Correction"[3] with the Commission, seeking an adjustment of the 2012 award, alleging that

---

(continued . . .)

(b) *Failure to file claim.* – (1) Unless excused by the Commission under paragraph (2) of this subsection, failure to file a claim in accordance with subsection (a) of this section bars a claim under this title.
(2) The Commission may excuse a failure to file a claim in accordance with subsection (a) of this section if the Commission finds:
(i) that the employer or its insurer has not been prejudiced by the failure to file the claim; or
(ii) another sufficient reason.
(3) Notwithstanding paragraphs (1) and (2) of this subsection, if a covered employee fails to file a claim within 2 years after the date of the accidental personal injury, the claim is completely barred.
(c) *Filing a claim – Ionizing radiation.* – If a covered employee is disabled due to an accidental personal injury from ionizing radiation, the covered employee shall file a claim with the Commission within 2 years after:
(1) the date of disablement; or
(2) the date when the covered employee first knew that the disablement was due to ionizing radiation.
(d) *Estoppel or fraud.* – (1) If it is established that a failure to file a claim in accordance with this section was caused by fraud or by facts and circumstances amounting to an estoppel, the covered employee shall file a claim with the Commission within 1 year after:
(i) the date of the discovery of the fraud; or
(ii) the date when the facts and circumstances that amount to estoppel ceased to operate.
(2) Failure to file a claim in accordance with paragraph (1) of this subsection bars a claim under this title.

[3] Code of Maryland Regulations (COMAR) 14.09.03.15B provides that the "Request for Document Correction form may be used to correct an error when: (1) There

(continued . . .)

the rate of his compensation was incorrectly calculated, because he qualified as a "public safety employee" under Section 9-628(a)(5) of the Labor and Employment Article,[4] and as such, was entitled to a greater rate of compensation.[5] He also posited, in his Request for Document Correction, that the Commission had the power to amend his previous award because it possessed "continuing jurisdiction" over the previous order. The Commission agreed, and issued an amended award retroactively changing Officer Gang's rate of compensation from $157.00 to $314.00 per week for seventy weeks beginning October 21, 2011.

Montgomery County, however, filed a Request for a Rehearing on the matter with the Commission, stating: "The County did not agree to this document correction and was not asked for its agreement. Please rescind the revised order and reinstate the original order as there was no agreement to the document correction. Moreover, the original order was

---

(continued . . .)

is an undisputed typographical error; or (2) All parties agree that the factual error is undisputed." Subsection C of the same COMAR provides that a "Request for Document Correction form may not be used to: (1) Obtain reconsideration or rehearing of an issue; (2) Correct a factual matter over which there is a dispute."

[4] Pursuant to Section 9-628(a)(5) of the Labor and Employment Article, the definition of "public safety employee" includes "a Montgomery County deputy sheriff or correctional officer." Section 9-628(h) of the same Article provides:

> If a public safety employee is awarded compensation for less than 75 weeks, the employer or its insurer shall pay the public safety employee compensation at the rate set for an award of compensation for a period greater than or equal to 75 weeks but less than 250 weeks under § 9-629 of this subtitle.

[5] Both parties concede that Officer Gang should have been classified as a "public safety employee" at the time of his initial claim.

4

issued on May 2, 2012, almost four years ago." The Commission held a hearing on the matter, and after hearing arguments, affirmed the Order which increased the rate of compensation for Officer Gang's permanent partial disability award from $157.00 to $314.00 a week, beginning October 21, 2011, for a period of seventy weeks based on his status as a "public safety employee" at the time of his injury. At the hearing, the Commissioner stated that he believed the Commission had the jurisdiction to correct an error such as this, particularly if it was a mistake made by the Commission of which none of the parties was aware.

Montgomery County filed a Petition for Judicial Review in the Circuit Court for Montgomery County. The Circuit Court held a hearing on the matter, and by order, affirmed the decision of the Commission, reasoning that the Act "provides the Commission with broad authority to make any changes that it believes are justified within five years from the latter of the date of the accident, the date of disablement or the last compensation payment, without the occurrence of" an aggravation, diminution or termination of disability.

Montgomery County appealed the decision of the Circuit Court to the Court of Special Appeals, and in a reported opinion,[6] our intermediate appellate court reversed the decision of the Circuit Court, holding that the Commission erred in retroactively modifying Officer Gang's workers' compensation award. *Montgomery Cty v. Gang*, 239 Md. App.

---

[6] The opinion of the Court of Special Appeals was originally filed as an unreported decision on August 9, 2018, but at the request of Montgomery County, was later re-filed as reported on November 8, 2018.

321, 196 A.3d 533 (2018). The Court first noted that "although the revisory power of the Commission under § 9-736 is broad, it is not unlimited[,]" *id.* at 329, 196 A.3d at 538 (quoting *Sealy Furniture of Maryland v. Miller*, 356 Md. 462, 468, 740 A.2d 594 (1999)), and concluded that the Act in fact limited the Commission's ability to reopen a claim and modify an award to situations in which the award was "based on a legal mistake in light of case law," *id.* at 330–32, 196 A.3d at 539 (citing *Subsequent Injury Fund v. Baker*, 40 Md. App. 339, 392 A.2d 94 (1978)), or based on a "statutory revision," *Gang*, 239 Md. App. at 331–32, 196 A.3d at 539 (citing *Waters v. Pleasant Manor Nursing Home*, 127 Md. App. 587, 736 A.2d 358 (1999), *aff'd*, 361 Md. 82, 760 A.2d 663 (2000)). It also concluded that the Commission may have the power to correct the rate of compensation prospectively but not retrospectively. *Gang*, 239 Md. App. at 332–33, 196 A.3d at 540.

The Court also rejected Officer Gang's argument that the Commission was "merely 'correcting a clerical error'" because the 2012 order constituted a final award and "[n]o action was taken by [Officer Gang] to appeal or have the Commission reconsider its decision." *Id.* at 333, 196 A.3d at 540. Thus, "under the circumstances of this case," the Court posited, "four years after the final award, the Commission's authority was limited to readjustment of a future rate of compensation upon a worsening or diminution of condition." *Id.* Finally, the intermediate appellate court noted that the Commission's actions "impermissibly extended the five-year time limit [in which to file for a modification], and thus, exceeded its statutory authority." *Id.* at 333–34, 196 A.3d at 540–41 (citing *Seal v. Giant Food, Inc.*, 116 Md. App. 87, 96, 695 A.2d 597 (1997)).

6

Officer Gang then filed a petition for certiorari, which we granted, *Gang v. Montgomery County*, 462 Md. 554, 201 A.3d 1227 (2019), to consider various questions, all of which we have rephrased and abbreviated into one[7]:

[7] Officer Gang presented us with the following questions:

1. Did the Court of Special Appeals err in finding that the language in § 9-736(b) of the Labor and Employment Article of the Maryland Code does not permit the Commission to revise its own Order within the statutorily promulgated five (5) year period, given that: (1) the modification was granted under the Commission's expressly provided power under § 9-736(b) to correct a prior Order in the interest of justice; (2) the modification was requested prior to the five (5) year period running; and (3) both the Court of Special Appeals in the past, and this Court recently in *Labonte*, have ruled that the Commission indeed has such revisionary powers?

2. Whether the Court of Special Appeals erred in overturning the Commission and the Circuit Court in holding that the Commission had improperly utilized its statutory revisory power considering that both parties agreed on the record that the prior Order regarding the rate of benefits for Officer Gang was an error of law and that our appellate courts have repeatedly ruled that the Commission, like a trial court, has broad powers to revise mistakes or errors of law during the prescribed period of time set out in the Rules or in the Workers' Compensation Act?

3. Did the Court of Special Appeals err in finding that subsection (a) of § 9-736, which deals with re-openings for "aggravation, diminution, or termination," should be read to constrict the revisionary powers of the Commission to "modify" a prior Order under subsection (b), given that the instant case did not involve a reopening for "aggravation, diminution or termination" under subsection (a) but, rather, dealt with a "Modification" under subsection (b)?

4. Should this Court veer away from the long-standing Maryland state, as well as Federal, principle that an administrative agency, particularly one that was created to administer social legislation such as the Maryland Workers' Compensation Commission, be given deference in interpreting sections of its own statute?

7

Does the Workers' Compensation Commission have the authority to reopen a claim and retroactively readjust a rate of compensation within five years from the date of the last compensation payment when it finds that, based on a mistake or error, the injured employee received a lower rate of compensation than that to which he was otherwise entitled?

For the reasons that follow, we shall hold that the Commission had the authority to reopen Officer Gang's award of permanent partial disability compensation and retroactively adjust his rate of compensation because his request for such, which was made within five years from the date of his last compensation, was based on a mistake or error.

## DISCUSSION

The Maryland Workers' Compensation Act was enacted by Chapter 800 of the Maryland Laws of 1914. The purpose of the Act is "'to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment.'" *Roberts v. Montgomery Cty.*, 436 Md. 591, 603, 84 A.3d 87, 95 (2014) (quoting *Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368, 377, 61 A.3d 33, 38 (2013) (internal citations omitted)). Employers also are the beneficiary of the Act because they no longer have to face the spectre of suits and inconsistent verdicts. *Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 76–77, 684 A.3d 1338, 1341 (1996) ("[T]he Act also recognizes the need to protect employers from the unpredictable nature and expense of litigation" and relieves them "from the vagaries of tort liability." (citations omitted)).

The Act is remedial in nature and "should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent

8

purposes. Any uncertainty in the law should be resolved in favor of the claimant." *Stachowski v. Sysco Food Services of Baltimore, Inc.*, 402 Md. 506, 513, 937 A.2d 195, 199 (2007) (quoting *Design Kitchen v. Lagos*, 388 Md. 718, 724, 882 A.2d 817, 821 (2005) (internal citation omitted)); *see also Roberts*, 436 Md. at 603, 84 A.3d at 95; *Montgomery Cty. v. Deibler*, 423 Md. 54, 61, 31 A.3d 191, 195 (2011). Furthermore, in light of the Act's benevolent and remedial nature, the statutory scheme also evinces an intent to treat "public safety employees" differently by awarding them a higher rate of compensation where so provided. Section 9-628 of the Labor and Employment Article.

The Act is intended "to give prompt relief to injured workmen, and it created the Commission to administer the law." *Egeberg v. Maryland Steel Products Co.*, 190 Md. 374, 379, 58 A.2d 684, 685–86 (1948); *see also Temporary Staffing, Inc. v. J.J. Haines & Co., Inc.*, 362 Md. 388, 398, 765 A.2d 602, 607 (2001). "Many sections of the law seem to demonstrate what is otherwise notorious," that the Commission "is the body to which decision upon claims is principally committed." *Temporary Staffing, Inc.*, 362 Md. at 399–400, 765 A.3d at 608 (quoting *Hathcock v. Loftin*, 179 Md. 676, 678, 22 A.2d 479, 480 (1941)). The General Assembly established the Commission "and provided it with the power to carry out the intent of the Act[,]" such that its "jurisdiction includes the authority to approve claims, reopen cases, make determinations on employment relationships, determine liability of employers, award lump sum payments, approve settlements, award fees for legal services, funeral expenses, and medical services." *Temporary Staffing, Inc.*, 362 Md. at 400, 765 A.3d at 608. Given the Commission's breadth of authority and discretion, we recognize its "expertise in the field of workers' compensation and

9

consequently grant a degree of deference to the Commission's interpretation" of the statutes which it administers. *Pro-Football, Inc. v. McCants*, 428 Md. 270, 283, 51 A.3d 586, 593 (2012) (citing *Motor Vehicle Admin. v. Carpenter*, 424 Md. 401, 413, 36 A.3d 439, 446 (2012)).

The particular statutory provisions of the Act upon which the instant dispute centers are contained in Section 9-736 of the Labor and Employment Article, which in pertinent part, provides:

> (a) *Readjustment of rate of compensation*. – If aggravation, diminution, or termination of disability takes place or is discovered after the rate of compensation is set or compensation is terminated, the Commission, on the application of any party in interest or on its own motion, may:
> (1) readjust for future application the rate of compensation; or
> (2) if appropriate, terminate the payments.
>
> (b) *Continuing powers and jurisdiction; modification*. – (1) The Commission has continuing powers and jurisdiction over each claim under this title.
> (2) Subject to paragraph (3) of this subsection, the Commission may modify any finding or order as the Commission considers justified.
> (3) Except as provided in subsection (c) of this section, the Commission may not modify an award unless the modification is applied for within 5 years after the latter of:
> (i) the date of the accident;
> (ii) the date of disablement; or
> (iii) the last compensation payment.

Section 9-736(b), however, is the gravamen of the dispute between the parties and it is to our jurisprudence regarding the breadth of this provision that we now turn.

In *Electrical General Corp. v. Labonte*, 454 Md. 113, 164 A.3d 157 (2017), we recently noted that, under Section 9-736(b), "the Commission is not bound to follow its previous awards and orders; to the contrary, the Commission has the express authority to modify the same." *Id.* at 143, 164 A.3d at 175. In that case, Section 9-736(b)

10

"unequivocally" supported our holding that, "where the Commission has determined an employee's permanent partial disability and apportioned between an accidental personal injury[8] and a subsequent intervening injury, if the employee's condition worsens, the Commission is not precluded from awarding workers' compensation due to the accidental personal injury." *Id.*

LaBonte, who incurred a back injury while working as an electrician, filed a claim with the Commission seeking temporary total disability benefits and temporary partial disability benefits, both of which the Commission subsequently awarded. He was subsequently injured outside of his workplace in an unrelated matter, but nonetheless, filed a claim with the Commission seeking additional temporary total disability benefits, which the Commission, by order, denied. Following that denial, LaBonte filed Issues[9] with the Commission seeking permanent partial disability benefits, which the Commission awarded, finding that his disability was partly due to his work-related injury and partially due to "pre-existing and subsequent conditions[.]" *Id.* at 119–20, 164 A.3d at 161.

Within years, LaBonte filed a Petition to Reopen, alleging that his back condition had worsened and seeking additional permanent partial disability benefits. The

---

[8] Section 9-101(b) of the Labor and Employment Article defines "accidental personal injury" as an "accidental injury that arises out of and in the course of employment."

[9] "After [a] claim [for workers' compensation] has commenced, any party may raise an issue by filing [ ] issues[.]" Md. Code Regs. (COMAR) 14.09.03.02B. "The issues that a party may raise by filing Issues include '[w]hether the employee is entitled to temporary partial and temporary total disability benefits' and '[t]he nature and extent of a permanent disability to specified body parts[.]'" *Electrical General Corp. v. Labonte*, 454 Md. 113, 119 n. 1, 164 A.3d 157, 161 n. 1 (2017)

11

Commission granted the petition but denied his request for more benefits, finding that there "had not been a worsening of LaBonte's back condition that was causally related to his" work-related injury "because the Commission's previous Order and Award of Compensation had established a 'subsequent intervening event' that broke the 'causal nexus'" between the work-place injury and his pre-existing condition. *Id.* at 120, 164 A.3d at 161–62. A jury in the Circuit Court, after LaBonte filed a petition for judicial review, found that his worsening back condition was a result of his work-related injury. The Court of Special Appeals affirmed, as did we. As a part of our analysis, we explained that nothing in the Commission's prior orders precluded the Commission from "determining at a later date how much, if any, a worsening of LaBonte's back condition was due to his accidental personal injury." *Id.* at 143, 164 A.3d at 175. We emphasized that Section 9-736(b)(2) provided the Commission with the wide discretion "to modify its previous finding of the proportion of LaBonte's back condition that was due to his accidental personal injury." *Id.*

*Labonte* was not the first of our cases in which we recognized the wide breadth of the Commission's authority to modify its previous findings or orders. In *Potomac Abatement, Inc. v. Sanchez*, 424 Md. 701, 37 A.3d 972 (2012), we were asked whether the Commission retained jurisdiction over an employee's claim, under Section 9-736(b), to consider the employee's additional requests for relief while a previous order involving the same claim was on judicial review. We held that the Commission retained continuing jurisdiction to consider the claimant's new requests for temporary total disability benefits and vocational rehabilitation services even though a prior order of the Commission with regards to the claimant's permanent partial disability award was pending on judicial

12

review.  We reasoned that "[w]hether the Commission can hear new benefits requests pending appeal, and if so, when, affects claimants' ability to receive proper, prompt treatment and compensation during the often long and complex healing process."  *Id.* at 710, 37 A.3d at 977.  In the context of that case, we concluded that Sanchez, the injured employee/claimant, "should be entitled to a hearing on his new issues under Section 9-736(b), so long as no 'evidence was offered' or 'decision made' on those issues at the previously appealed hearings."  *Id.* at 725, 37 A.3d at 986 (citing *Pressman v. State Accident Fund*, 246 Md. 406, 415–16, 228 A.2d 443, 449 (1967)).[10]

---

[10] Additionally, in *Pressman v. State Accident Fund*, 246 Md. 406, 228 A.2d 443 (1967), we were asked to interpret Section 9-736(b)'s predecessor, Section 40(c) of Article 101, Maryland Code (1957).  In *Pressman*, the claimant filed an issue with the Commission as to whether the defendant was the insurer while the Commission's decision as to whether a certain party had been the claimant's employer was pending on judicial review.  We held that the Commission had the power "to adjudicate the status" of the employer as "insured or uninsured" pursuant to the Commission's continuing jurisdiction, particularly because the Commission had "not dealt with or embraced within a decision on the other aspects which had been appealed."  *Id.* at 416, 228 A.2d at 449 (citing *Plater v. Kane Warehouse*, 241 Md. 462, 466, 217 A.2d 101 (1966); *Union Mining Co. v. Del Signora*, 191 Md. 55, 61, 59 A.2d 771 (1948) ("After the Commission made the award in this case, and no appeal was taken therefrom, it retained jurisdiction over the matter, because section 66[, Section 9-736(b)'s predecessor,] provides that thereafter its jurisdiction was continuing.")).  The issue raised before the Commission during the pendency of the judicial review was "in furtherance of its duties under the law with respect to matters" which were "independent and distinct from the issues on appeal," and as such, came within the Commission's exclusive jurisdiction.  *Pressman*, 246 Md. at 416, 228 A.2d at 449 (quoting *State v. Industrial Commission*, 165 N.E.2d 211, 216 (Ohio Ct. App. 1960)).  *See also Dyson v. Pen Mar Co.*, 195 Md. 107, 73 A.2d 4 (1950) (holding that, pursuant to the statutory predecessor of Section 9-736(b), the Commission had jurisdiction to consider claimant's request which sought to set aside a settlement agreement that had already been approved by the Commission, on the ground of mutual mistake under which the parties acted).

As far back as 1936, we, in *Stevenson v. Hill*, 170 Md. 676, 185 A. 551 (1936), considered the breadth of the Commission's ability to modify its previous orders. In *Stevenson*, the wife of a deceased employee filed a claim seeking survivor benefits under the Workmen's Compensation Code as a result of her husband's accidental work-related death. The State Industrial Accident Commission[11] awarded her compensation, but she later requested a rehearing in the case, contending that the rate of compensation set forth in her award should have been greater: "I think the award is too small, as I am satisfied the earnings of my husband were greater than those given consideration in my claim. . . . I can show your Commission that the award should be increased[.]" *Id.* at 678, 185 A. at 552. The employer sought to dismiss the wife's claim, contending the Commission correctly calculated the employee's average weekly wage and that the wife was precluded from seeking modification, since she "took no appeal to the Circuit Court . . . within the period of thirty days as provided by law[.]" *Id.* at 678–79, 185 A. at 552. The Commission denied the employer's motion to dismiss, received evidence on the matter and ultimately concluded that the employee's average weekly wage was as the wife represented, but nonetheless, found that the wage was insufficient to support an increase in the rate of compensation.

Both the employer and the wife-claimant sought judicial review in the Circuit Court. The employer filed a motion to dismiss, which the Circuit Court granted on the basis that

---

[11] The Workers' Compensation Commission was formerly known as the State Industrial Accident Commission. Chapter 584 of the Maryland Laws of 1957 changed the name to the Workmen's Compensation Commission, which then became the Workers' Compensation Commission in 1991. 1991 Md. Laws, Chap. 8.

the Commission was not authorized to reopen a case in which it had already issued a final order. When we were asked to review the decision, the wife argued that the Commission was authorized to re-open the claim based on an error in the calculation of her husband's average weekly rate, while the employer argued that the Commission was not authorized to re-open the claim because Section 43, the predecessor to Section 9-736(a), limited Section 54, the predecessor to Section 9-736(b). We agreed with the wife.

In holding that the Commission possessed the authority to reopen its previous order, we distinguished the Commission's power under Section 54 and Section 43 of Article 101, stating that:

> If the power to reopen cases was intended to be confined to those in which the disability had become aggravated, diminished, or terminated, the limitation of time as to the exercise of the power could readily have been included in section 43, and the enactment of section 54 would have been superfluous. In our opinion section 54 was intended to have a broader effect than section 43 in the scope of the authority granted to the commission to reopen cases under circumstances justifying such actions. Therefore, we are unable to agree with the view that the reopening and modifying order of the commission in the present case was beyond its legitimate power.

*Id.* at 684, 185 A. at 555. We held that the two statutory provisions were wholly independent of one another and that Section 54 was not restricted by the language of Section 43, as both sections embodied separate considerations, thereby reversing the decision of the Circuit Court and remanding the case to consider the claimant's argument as to why she should receive a higher rate of compensation. We were clear that the Commission had the "legitimate power" to reconsider the rate of compensation set forth in a prior order even where there was no aggravation or diminution of disability, pursuant to its continuing jurisdiction.

15

The *Stevenson* case itself supports the conclusion herein that the Commission has continuing jurisdiction to reopen Officer Gang's case to correct an error of law as long as the application for the modification was filed within five years, as it was. Certainly, *Stevenson*'s progeny in this Court and the Court of Special Appeals[12] also supports the

[12] In *Subsequent Injury Fund v. Baker*, 40 Md. App. 339, 392 A.2d 94 (1978), the Court of Special Appeals held that the predecessor of Section 9-736(b) permitted the Commission to consider legal issues not previously raised before it. In *Baker*, the employee fractured his right arm at work and, while receiving treatment, discovered that he had a form of bone cancer which pre-dated the workplace injury. *Id.* at 340, 392 A.2d at 95. The Commission found Baker "permanently and totally" disabled, awarding him $45,000 in compensation. *Id.* On judicial review, however, the Circuit Court remanded the matter to the Commission to reconsider the amount awarded. *Id.* at 340–41, 392 A.3d at 95–96. The Subsequent Injury Fund ("Fund"), who had been impleaded during the original Commission hearing, but took no part in the judicial review, filed new issues and requested that the Commission modify its prior award against it. *Id.* at 340–41, 392 A.2d at 95–96. The Commission eliminated the amount due to Baker by the Fund and Baker filed a petition for judicial review, where the trial judge reinstated and increased the amount the Fund owed him. *Id.* at 341, 392 A.2d at 96. The court reasoned that because the Fund did not take issue with the Commission's initial order, "that order was Res judicata and the Commission exceeded its authority on remand by reopening the case and hearing issues that were previously determined." *Id.*

The Court of Special Appeals disagreed and explained that the Workers' Compensation Act "not only gives the Commission continuing jurisdiction over each case, it also invests the Commission with blanket power to make such changes as in its opinion may be justified." *Id.* at 345–46, 392 A.2d at 98 (citations omitted). The Court noted that nothing in the statutory language "limits . . . the re-opening of a case to instances where there is a change of facts or newly discovered evidence. Nor does the statute preclude the Commission from re-opening a case in which it has mistakenly interpreted the law." *Id.* at 346, 392 A.2d at 98. *See also Waters v. Pleasant Manor Nursing Home*, 127 Md. App. 587, 736 A.2d 358 (1998), *aff'd*, 361 Md. 82 (2000) (holding that Section 9-736(b) permitted the Commission to reopen a case in which it had mistakenly interpreted and misapplied the law resulting from a statutory amendment); *Frederick County Board of Commissioners v. Sautter*, 123 Md. App. 440, 449, 718 A.2d 685, 689–90 (1998) (stating that subsection (b) "is not merely descriptive of the Commission's power to modify awards under" subsection (a); "[i]nstead, it is a separate and distinct source of the Commission's power to modify its own orders. . . . [S]ubsection (b), or its statutory predecessor, has been used by the Commission to revisit issues already decided by it." (internal citations omitted)).

16

ability of the Workers' Compensation Commission to correct its own errors of law within the time of limitations of Section 9-736(b).

We differ in this regard in the instant case with the Court of Special Appeals in its interpretation of the case law involving Section 9-736(b), because our brethren regarded the present issue as incapable of being addressed under the Commission's continuing jurisdiction rather than being enveloped within the breadth of Section 9-736(b), as we do here. The Court of Special Appeals held that the Commission's authority under Section 9-736(b) was limited to circumstances under which an order was entered based on a mistake, in light of recent case law, *Baker*, *supra*, 40 Md. App. 339, 392 A.2d 94, based on a statutory amendment, *Waters*, *supra*, 127 Md. App. 587, 736 A.2d 358, and the ability to prospectively change the rate of compensation based on a similar error. Such an interpretation is not consistent with our jurisprudence, especially our recent holding in *Labonte*, *supra*, 454 Md. 113, 164 A.3d 157, as well as that of *Sanchez*, *supra*, 424 Md. 701, 37 A.3d 972, *Pressman*, *supra*, 246 Md. 406, 228 A.2d 443 and *Stevenson*, *supra*, 170 Md. 676, 185 A. 551.

Montgomery County, however, posits that any reliance on *Stevenson*, or other cases which predate the codification of Section 9-736(b), is misplaced because Section 9-736(b) is now in the same section as Section 9-736(a), so that subsection (a) specifically limits subsection (b) to the prospective application of a change in the rate of compensation in cases of aggravation, diminution, or termination of disability. Montgomery County's interpretation of the legislative history, however, is without basis.

17

The predecessors to subsections (a) and (b) both were enacted in 1914 but placed in different sections of Article 101 of the Maryland Code. 1914 Maryland Laws, Chapter 800 (codified at Md. Code (1914), Art. 101). At the time of its enactment, Section 43 of Article 101, the statutory predecessor of Section 9-736(a), in pertinent part, provided:

> If aggravation, diminution or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case, the Commission may, upon the application of any party in interest or upon its own motion, readjust for future application the rate of compensation in accordance with rules in this Section provided, or in a proper case, terminate the payments.

(1914). In 1914, Section 54 of Article 101, the statutory predecessor of Section 9-736(b), provided: "The powers and jurisdiction of the Commission over each case shall be continuing and it may from time to time make such modifications or change with respect to former findings or orders with respect thereto as in its opinion may be justified." (1914).

In the following years, although the sections moved around,[13] the language of the two sections remained essentially the same as the originals, except that which is now

---

[13] In 1939, Section 43 was moved to Section 55, and Section 54 was moved to Section 66, of Article 101. In its 1939 iteration, Section 66 of Article 101 was accompanied by an annotation which read:

> The powers conferred on the Commission to make modifications or changes in former orders not limited by Sec. 55, but refusal to reopen case for reconsideration of question previously determined is not appealable. *Stevenson v. Hill*, 170 Md. 676.

The annotation, with few non-substantive edits, has consistently appeared with each iteration of the Maryland Code and now appears under the section entitled "III REOPENING CASE, Extent of power to reopen cases." Md. Code (1991, 2016 Repl. Vol.), § 9-736 of the Labor and Employment Article. *See Kingsely v. Makay*, 253 Md. 24, 27, 251 A.2d 585, 587 (1969) (looking to a section of the Maryland Code "and the cases cited in the annotation thereto[,]" for authoritative support).

subsection (b) was amended on a number of occasions to add a statutory limitations period. In 1931, the law mandated that a party seeking modification file within one year following the final award of compensation, 1931 Maryland Laws, Chapter 342, then increasing the time to file to three years from the last payment of compensation, 1935 Maryland Laws, Chapter 236, and then again in 1969, to five years. 1969 Maryland Laws, Chapter 116. *See Stachowski*, *supra*, 402 Md. at 514–15, 937 A.2d at 199–200 (stating that "[i]n the original act, the Commission's power to modify an award was unrestricted.").

Until 1957, both provisions remained in separate sections of Article 101 until a code revision consolidated the two provisions under Section 40. 1957 Maryland Laws, Chapter 814 (H.B. 927). The predecessor to Section 9-736(a), Section 55, became Section 40(b), and the predecessor to Section 9-736(b), Section 66, became Section 40(c). As indicated in House Bill 927's preamble, the recodification was intended to implement a "general revision of the Workmen's Compensation law" and would reconsolidate the pertinent sections under one. This general purpose was made clear in a report published by the "Commission to Study Maryland Workmen's Compensation Laws and the Operation of The State Industrial Accident Commission" ("Study Commission"). In 1957, the Study Commission submitted a report to then-Governor Theodore McKeldin and the General Assembly, recommending that portions of the Act be repealed, replaced and consolidated. The Study Commission recommended that a portion of Article 101 be revised by creating one section to "include all provisions of law relating to the power and authority of the Commission with respect to hearings, orders and its continuing jurisdiction with respect to the same." Second Report to The Commission to Study Maryland's Workmen's

19

Compensation Laws and the Operation of The State Industrial Accident Commission, p. 15. The amendment proposed by the Study Commission was adopted and codified as Section 40 of Article 101. The statutory language of Section 40(b) and (c) did not alter or otherwise deviate from the language that existed in the sections prior to the 1957 code revision.

Because the Legislature did not indicate, in its 1957 code revision of the Workers' Compensation Act, an intent to alter the previous meaning of the two sections when it repealed and re-enacted them within Section 40 of Article 101, Maryland Code (1957), we adhere to the presumption that changes as a result of a code revision "are presumed to be for the purpose of clarity rather than for a change in meaning." *Blevins v. Baltimore Cty.*, 352 Md. 620, 642, 724 A.2d 22, 32–33 (1999) (quoting *Bureau of Mines v. George's Creek*, 272 Md. 143, 155, 321 A.2d 748, 754 (1974) (internal citation omitted)); *see also Smith v. Wakefield. LP*, 462 Md. 713, 726–27, 202 A.3d 1240, 1248 (2019).

In 1991, the consolidated section, renumbered again in light of a code revision, became Section 9-736 of the Labor and Employment Article. 1991 Maryland Laws, Chapter 8, Section 2. The Revisor's Note indicates that the recodification is "new language derived without substantive change from former Art. 101, §40(b) through (d)." Again, as a result of code revision, each section retained its independent meaning as emphasized in *Stevenson v. Hill*.

With respect to Montgomery County's argument that a worker's compensation award can only be modified prospectively, because Section 9-736(a) permits only the prospective adjustment of the rate of compensation in cases of aggravation, diminution or

20

termination of disability, we again emphasize that Section 9-736(a) does not limit Section 9-736(b) to prospective modification. Certainly, the ability to modify under the Commission's continuing power and jurisdiction would be a nullity, indeed, were it to be limited to prospective relief when the only relief to be had is retrospective, as here, when the final payment already has been made. We have found no bases in the statute nor in our cases to limit the breadth of Section 9-736(b) to only prospective application. *See Sealy Furniture of Maryland v. Miller*, 356 Md. 462, 740 A.2d 594 (1999)[14]; *Jung v. Southland Corp.*, 351 Md. 165, 717 A.2d 387 (1998).[15]

---

[14] In *Sealy Furniture of Maryland v. Miller*, 356 Md. 462, 740 A.2d 594 (1999), we held that, where the claimant was unaware that she was receiving benefits to which she was not entitled, the Commission lacked the statutory basis to credit an overpayment of temporary total disability benefits against a subsequent award of permanent partial disability benefits. In so holding, we noted that "although the revisory power of the Commission under § 9-736 is broad, it is not unlimited." *Id.* at 468, 740 A.2d at 597. We based our holding on the fact that our jurisprudence expressly provided that "when an overpayment arises from the payment of benefits pending judicial review, the employer is not entitled to recover any part of that payment, either directly from the employee or in the form of a credit against a continuing obligation to pay benefits." *Id.* at 467, 740 A.2d at 597.

[15] In *Jung v. Southland Corp.*, 351 Md. 165, 717 A.2d 387 (1998), we held that the Commission could not, pursuant to Section 9-736(b), reopen a temporary total disability claim, to recalculate a claimant's average weekly wage to reflect his then current wages, which had increased between the time of his return to work and the recurrence of the disability. In so holding, we noted that the Commission could not "trump or disregard other Legislative directives, reflected in other statutory provisions, which are not, by their terms, limited or otherwise made subject to [the Commission's power under Section 9-736(b).]" *Id.* at 175, 717 A.2d at 392. Our holding was premised on the conclusion that other statutory provisions contained in the Act tied "average weekly wage" to the date of the accidental personal injury, not on the claimant's current wage. As such, the Commission could not obfuscate limitations expressly set out in the Act by exercising its continuing jurisdiction where it deemed justified.

Montgomery County next posits that Officer Gang waived his right to request the higher rate of compensation by his failure to appeal, seek judicial review[16] or by failing to file a motion for a rehearing pursuant to Section 9-726 of the Labor and Employment Article,[17] which requires that a motion for a rehearing be filed within fifteen days from the

[16] Section 9-737 of the Labor and Employment Article provides:

An employer, covered employee, dependent of a covered employee, or any other interested person aggrieved by a decision of the Commission, including the Subsequent Injury Fund and the Uninsured Employers' Fund, may appeal from the decision of the Commission provided the appeal is filed within 30 days after the date of the mailing of the Commission's order by:
(1) filing a petition for judicial review in accordance with Title 7 of the Maryland Rules;
(2) attaching to or including in the petition a certificate of service verifying that on the date of the filing a copy of the petition has been sent by first-class mail to the Commission and to each other party of record; and
(3) on the date of the filing, serving copies of the petition by first-class mail on the Commission and each other party of record.

[17] Section 9-726 of the Labor and Employment Article provides:

(a) *Filing of motion.* – Within 15 days after the date of a decision by the Commission, a party may file with the Commission a written motion for a rehearing.
(b) *Content.* – A motion filed under subsection (a) of this section shall state the grounds for the motion.
(c) *Motion not a stay.* – A motion for rehearing does not stay:
(1) the decision of the Commission; or
(2) the right of another party to appeal from the decision.
(d) *Decision on motion.* – (1) Even if an appeal by another party is pending, the Commission promptly shall rule on a motion for rehearing.
(2) The Commission may decide a motion for rehearing without granting a hearing on the motion.
(3) The Commission may grant a motion for rehearing only on grounds of error of law or newly discovered evidence.

(continued . . .)

date of the Commission decision and "on grounds of error of law or newly discovered evidence." Montgomery County, however, fails to cite any authority in support of its argument that the breadth of the Commission's continuing jurisdiction is defeated by a party's failure to act. Rather, in *Stevenson*, *supra*, 170 Md. 676, 185 A. 551, we affirmed the Commission's re-opening of a claim despite the fact that the claimant had failed to petition for judicial review in the Circuit Court within thirty days of the Commission's decision, reasoning that the Commission was permitted to act based on its continuing

(continued . . .)

(e) *Holding rehearing.* – If the Commission grants a motion for rehearing, the Commission promptly shall hold the rehearing and pass an appropriate order, even if an appeal by another party is pending.

(f) *Effect on time for taking appeal.* – If a party files a motion for a rehearing in accordance with subsection (a) of this section, the time within which an appeal may be taken from the decision starts on:

(1) the date on which the Commission mails notice of the denial of the motion for a rehearing; or

(2) if the Commission grants the motion for rehearing, the date on which the Commission mails notice of an order under subsection (e) of this section.

(g) *Notification by mail.* – (1) If the Commission denies a motion for a rehearing, the Commission shall send a copy of the denial by first-class mail to each party's attorney of record or, if the party is unrepresented, to the party.

(2) If the Commission grants a motion for a rehearing, the Commission shall send a copy of the order issued in accordance with subsection (e) of this section, by first-class mail to each party's attorney of record or, if the party is unrepresented, to the party.

(h) *Determination of questions on appeal.* – (1) If a court hears an appeal from the decision before the Commission rules on a motion for a rehearing under subsection (d) of this section or passes an order under subsection (e) of this section, the court shall determine each question of fact or law, including a question that is still before the Commission.

(2) If a court hears an appeal after the Commission rules on a motion for a rehearing under subsection (d) of this section, the court shall determine each question of fact or law that arises under the original order and any later order that the Commission passes under subsection (e) of this section.

23

jurisdiction. *See also Charles Freeland & Sons, Inc. v. Couplin*, 211 Md. 160, 126 A.2d 606 (1956) (holding that the Commission could reopen a case more than fifteen months after its original decision denying a claim, thereby allowing the claimant to petition for judicial review from the second rejection of her claim more than fifteen months after she had lost that right from the Commission's first rejection).

Montgomery County, moreover, contends that Officer Gang failed to file a form entitled "Motion for Modification" in addition to filing the "Issue" to be resolved pursuant to Code of Maryland Regulations 14.09.03.13B, so that his request for modification was not appropriate to join the controversy. Relying on *McLaughlin v. Gill Simpson Elec.*, 206 Md. App. 242, 47 A.3d 1074 (2012), the County argues that the Commission is given wide discretion in promulgating regulations "to govern the procedures of the Commission" and to "determine the nature and the form of an application for benefits or compensation," Section 9-701 of the Labor and Employment Article, so that a claimant's failure to strictly adhere to the Commission's procedures must result in a denial of the relief sought. In *McLaughlin*, however, the claimant's "Petition to Reopen for Worsening of Condition" was barred by the statute of limitations in Section 9-736(b), because more than five years had transpired between the last payment of compensation and the application for modification. In the instant case, however, Officer Gang had filed this Request for Document Correction within five years of the last payment of compensation in accordance with Section 9-736(b)(3) of the Labor and Employment Article.

Montgomery County, finally, relies on *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 620 A.2d 340 (1993) and posits that by doing what we do now, we convert the five-year

24

statute of limitations to nine years. In *Vest*, however, the limitations period had clearly run, as over five years had transpired between the claimant's last payment of compensation and the date in which he petitioned the Commission for modification. In the present case, Officer Gang had applied for the correction before the statutory five-year period expired.

## CONCLUSION

In conclusion, then, we reverse the judgment of the Court of Special Appeals and hold that the Commission properly exercised its continuing jurisdiction to retroactively correct the rate of compensation in Officer Gang's award for permanent partial disability based on an error of law for which there had been application prior to the expiration of the five-year period of limitations.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**